BOARD OF MEDICAL REGISTRATION AND EXAMINATION
ET AL. *v.* KAADT.

[No. 28,330   Filed January 15, 1948.   Rehearing Denied
February 11, 1948.]

*Cleon H. Foust,* Attorney General, *Frank E. Coughlin,* First Deputy and *Thomas L. Webber,* Deputy Attorney General, for Board of Medical Registration, and *Albert Stump,* of Indianapolis, for T. M. Overley.

*Colerick, Corbett & Smith* and *Helmke, Phillips & Beams,* all of Fort Wayne, for appellee.

STARR, J.—Pursuant to the provisions of § 63-1306, Burns' 1943 Replacement, a proceeding was commenced against the appellee by the appellant, Board of Medical Registration and Examination of Indiana, for revocation of his license to practice medicine, surgery and

obstetrics. From an order of the board revoking and canceling his license appellee took a so-called appeal to the Whitley Circuit Court where the cause was tried. The Court found and adjudged the appellee not guilty of the charges filed against him and it is from this finding and judgment this appeal is taken.

This action originated in the filing with the appellant board by one T. M. Overley, in his individual capacity, a verified petition to revoke the license of Peter S. Kaadt to practice medicine. T. M. Overley has attempted to join as an appellant in this appeal. It is our opinion that he is not a party to these proceedings, therefore, this appeal is dismissed as to him.

This petition after setting out that the appellee was admitted to practice medicine, surgery and obstetrics in the State of Indiana on December 16, 1897, which license is still in full force and effect, alleges:

"(5) That for a number of months last past the said Peter S. Kaadt has been guilty of gross immorality in connection with his practice of medicine, surgery and obstetrics in the State of Indiana in this, to-wit:

"(a) That the said Peter S. Kaadt holds himself out as a specialist in the treatment of the disease of diabetes, claiming to use a method for treating said disease whereby it is unnecessary for persons suffering therefrom to restrict their diets and/or resort to insulin injections to control their blood sugar levels. That the said Kaadt so holds himself out and makes such claims well knowing that such claims and representations are false, and fully realizing that his method of treating diabetes is of little or no value and is entirely contrary to all regular methods of treatment employed by mem-

bers of his profession and school of training, who are specialists in the treatment of diabetes.

"(b) That, through advice and persuasion, the said Peter S. Kaadt has caused persons seriously ill with diabetes to wholly neglect insulin therapy and has informed them that they could eat anything they desired with no ill effects provided that they used his medicine as directed, knowing that said advice would result disastrously to said persons. That as a result said persons have delayed for long periods of time in obtaining proper treatment for said disease while their diabetic conditions progressed to dangerous and often fatal stages.

"(c) That the said Peter S. Kaadt at times makes false representations to his patients concerning the nature of diabetes, well knowing that his statements and representations are wholly contrary to the findings of all prominent research specialists in the field of diabetes, and contrary to the experiences of all recognized practitioners who treat said disease.

"(d) That the said Kaadt is careless and negligent in many instances in the diagnostic procedures which he employs. That he often fails to take adequate case histories from his patients and, in many cases makes no physical examination of his patients whatsoever. That as a consequence, many inaccurate and wholly erroneous diagnoses are made by the said Kaadt.

"(e) That the said Peter S. Kaadt leads his patients to believe that the medicines which he prescribes are compounded of substances of great medicinal value and monetary worth, according to a formula developed by his brother, Charles F. Kaadt, well knowing that all of said statements are grossly

inaccurate if not wholly untrue. That by means of said statements and representations the patients of the said Peter S. Kaadt are induced to purchase medicines from him at exorbitant and outrageous prices. That said Kaadt makes such sales of his medicines solely for his own personal gain and having no regard whatsoever for the physical or financial welfare of his patients, and having no regard for the ethics of his profession.

"(f) That by willfully deceiving and misleading his patients, the said Peter S. Kaadt builds up in them false hopes and a confidence that his methods of treatment afford a means whereby said patients may avoid the expense, inconvenience and annoyance of following the only scientific methods that are known to his profession for the proper management and control of diabetes; and, that while his patients are in such condition of credulity and, while they are so misinformed, he induces them to go out and encourage other like sufferers to come to his institution for treatment. All of this in spite of the fact that under his treatment those who are actually suffering from diabetes gradually grow worse and many die.

"(6) Affiant submits that the practices and conduct of the said Peter S. Kaadt, hereinbefore set forth, constitute gross immorality, and that his practices and activities are manifestly inimical to public health and welfare and contrary to the laws of the State of Indiana regulating the licensing of medical doctors and the practices of medicine."

It will be seen from the foregoing petition that the sole ground upon which the board seeks to revoke the appellee's license to practice is that of "gross immorality." The above cited statute provides that this is a

proper ground for such revocation. The sufficiency of this petition has not been questioned by the appellee nor is it claimed that any of the statutory procedural methods guaranteed the appellee have not been fully performed and carried out.

The only question which was before the trial court for decision was whether or not the decision of the board is based "upon a substantial factual foundation." In making this decision the trial court was not empowered to weigh the evidence. *Warren* v. *Indiana Telephone Co.* (1940), 217 Ind. 93, 26 N. E. (2d) 399; See also *Board of Medical Registration, etc.,* v. *Scherer* (1943), 221 Ind. 92, 46 N. E. (2d) 602; *Board of Medical Registration and Exam.* v. *Moore* (1947), 224 Ind. 621, 70 N. E. (2d) 354.

In the light of the foregoing rules we will now consider the evidence before the board to support its finding. The only evidence introduced at the trial was the evidence which had been introduced before the board. This evidence, to support the board's finding disclosed that for one year prior to October 6, 1946, the appellee maintained his office, designated at times as a diabetic institute in South Whitley, Indiana, and during this time this office had had at least 100 patients every day and that there were over 60 rooming houses in South Whitley that were taking care of these patients. This evidence also disclosed that in the month of October, 1945, the appellee along with his brother, was practicing at said office. That they made representation to patients that they could cure diabetes. On one occasion they made such representation to an admitted diabetic who had been suffering from the disease for at least six years prior to said representation. They also told her she could eat about anything. That at the time they made said representation to this particular patient they

were furnishing meals for her and fed her cake, pie, potatoes and gravy, prunes and oatmeal; that there was a lot of sugar in this food and "the prunes were stiff with sugar." She talked to both appellee and his brother when she first went to appellee's office in October, 1945, and in the presence of each of them, appellee's brother handed her a diet sheet; that said diet sheet among other things stated that in many cases of diabetes, ice cream, cake, pie and honey (clover or buckwheat only) and in fact most anything that has been made with sugar that has been thoroughly cooked were beneficial to one suffering with this disease.

This evidence also discloses that there was a printed pamphlet distributed at the institute, by a desk clerk, to the patients being treated by the appellee and his brother; that this pamphlet purported to have been prepared by appellee's brother who was so associated with him and disclosed that they were doing business under the name of "Kaadt Diabetic Institute." This pamphlet, among other things, contained a foreword wherein it was stated that there was real hope for the diabetic through their method of treatment which method is free from prolonged or continuous dieting. The pamphlet also stated that the principal method of treatment employed was an internal medicine taken by mouth; that in a majority of cases the patient resumes a normal diet within two or three weeks after beginning the treatment, and that in a large number of cases recovery had occurred. This pamphlet stated that this factor should be of considerable importance in the eyes of a diabetic patient because many of them have faced the prospect of a lifelong restriction of diet. It also appears from this evidence that patients were advised to attend the institute for three days, for which there was a charge of 30 dollars including board, and that

upon their leaving they were given a three months medical treatment to take home with them, for which there was a charge of 30 dollars; that the medicine which was to be taken home consisted of one gallon of liquid in a glass container; this liquid consisted of vinegar to which had been added potassium nitrate, some pepsin and takadiastase. One witness stated that this liquid was mostly saltpeter and vinegar. In addition to this gallon of liquid the patient was given a box of cathartic and digestive pills to take during his home treatment. The wholesale cost of this liquid medicine was 93 cents per gallon; that the appellee had prescribed for patients, and medicine had been sold and administered to them without any physical examination and that he had prescribed and given medicine for diabetes to persons who were free from that disease without making any of the usual and known tests for diabetes; that in no case was there a blood test made for sugar before prescribing for patients; that insulin and diet are the only known and accepted methods of treatment for diabetes; that there is no oral treatment recognized by the medical world for the treatment of diabetes and that to remove patients suffering from this disease from insulin is dangerous and may be fatal; that the consumption of sugar by a diabetic is injurious to him and the fact that sugar has been cooked does not render the same harmless; that all sugar in its making is necessarily cooked; that the treatment adopted by the appellee for diabetes is not approved by any other person in the profession other than his brother; that there had been no clinical tests or experimental stage in the development of this medicine; that the treatment and medicine prescribed by the appellee is of no benefit to diabetics; and that the giving of the same has at times injured the patients and some have

died from its effect; that in diagnosing this disease a blood test for sugar is necessary. This evidence also discloses that appellee was a graduate of a reputable medical school and had had years of practice in his profession prior to his present venture.

In order for the evidence above set out to establish gross immorality we must conclude that it is sufficient to support the inference that the practice complained of was not an honest effort on the part of the appellee to relieve suffering but was a scheme for his unjust enrichment.

The important question at issue is what the appellee knew to be the facts. If the treatment which he afforded was not a cure or a proper remedy for diabetes and he knew this to be the truth, then he was guilty of a scheme to defraud. *Samuels* v. *United States,* 232 Fed. 536, (C. C. A. 8th 1916).

It has been said:

"That false and fraudulent representations may be made with respect to the curative effect of substances is obvious. It is said that the owner has the right to give his views regarding the effect of his drugs. But state of mind is itself a fact, and may be a material fact, and false and fraudulent representations may be made about it; and persons who make or deal in substances or compositions alleged to be curative are in a position to have superior knowledge, and may be held to good faith in their statements (citing authorities). It cannot be said, for example, that one who should put inert matter or a worthless composition in the channels of trade, labeled or described in an accompanying circular as a cure for disease, when he knows it is not, is beyond the reach of the lawmaking power." *Seven Cases, Eckman's Alternatives* v. *United States,* 239 U. S. 510, 36 Sup. Ct. 190, 60 L. Ed. 411.

The appellee lays great stress on the contention that to empower the appellant to pass upon his good faith in

what he is charged with having done would have a crippling effect upon the advances in medical science, as it would prevent the use of new remedies. With this we cannot agree. A physician is not limited to the most generally used of several approved modes of treatment and the use of another mode known and approved by the profession is proper, but every new method of treatment should pass through an experimental stage in its development and a physician is not authorized in trying untested experiments on patients. 41 Am. Jur. *Physicians and Surgeons,* § 86.

The case of *Brinkley* v. *Hassig,* 83 F. (2d) 351, (C. C. A. 10th 1936) involved the question of the revocation by the Kansas State Medical Board of the license of one John R. Brinkley to practice medicine. The revocation was had under a statute similar to ours.

We approve of that portion of the opinion found on page 353 of said case which reads as follows:

"The Legislature enacted that membership of this board should be confined to physicians and surgeons because they alone have the education and experience to determine such questions as are here presented. Does this record disclose no more than a conflict of opinion among·reputable surgeons as to the technique of operative procedure, or as to when it is indicated? Or does it disclose that appellant was using his license to perpetrate a cruel hoax upon the public by exacting extravagant fees for a trivial and worthless operation? Did appellant endanger the health of his patients by seducing them into the belief that serious diseases could be cured by a surgical hocuspocus? Whether it is the one or the other is a question peculiarly for the decision of men skilled in anatomy. There is a great volume of evidence in this record to support the latter conclusion; and if such is the fact the board would have been derelict if appellant's license had not been revoked. It is true, as counsel argue, that the great advances in medical science have come about by the courage of pioneers, whose

efforts often met with ridicule from their professional brethren. It is true that doctors even yet disagree. It is also true that charlatans masquerading as doctors defraud the public to their own enrichment by promising to cure cancer with innocuous ointments, and thus endanger the lives of their patients by depriving them of sound medical advice. Between these two extremes there is a twilight zone where doubts might perplex. But unless we can say, from the record, that there is no doubt that this is a mere disagreement among doctors, the finding of the board is not open to our review. The Legislature has properly committed the vital question of the fitness of those who administer to the sick to a skilled board of medical men, and not to courts unlearned in the art. The proof here amply supports the conclusion that the compound operation is not an honest effort to relieve the suffering, but a scheme for appellant's unjust enrichment."

It will be noted that the appellee is a man of broad professional experience and has been sufficiently educated in his profession. The board was justified in not attributing the acts complained of to mistake arising out of inexperience or lack of knowledge.

It is our opinion that there was sufficient competent evidence in the record to support the finding of the board.

Judgment reversed with instructions to the trial court to enter an order sustaining the order of the board revoking appellee's license.

Emmert J., not participating.

NOTE.—Reported in 76 N. E. (2d) 669.