368 N.E.2d 264 (1977)
Arthur A. BROOK, Tracy Lynn Brook, Plaintiffs-Appellants,
v.
ST. JOHN'S HICKEY MEMORIAL HOSPITAL, Guy E. Ross, Lawrence Allen, Warren E. Fischer, Defendants-Appellees.
No. 2-276A52.
Court of Appeals of Indiana, First District.
October 26, 1977.
Rehearing Denied December 8, 1977.
*265 J. Conrad Maugans, Bayliff, Harrigan, Cord & Maugans, Kokomo, Michael E. Tancey, Elwood, Douglas D. Church, Roberts, Church & Beerbower, Noblesville, for appellants.
*266 Michael A. Bergin, Locke, Reynolds, Boyd & Weisell, Ralph A. Cohen, Ice, Miller, Donadio & Ryan, John P. Price, Jon D. Krahulik, Bingham, Summers, Welsh & Spilman, Indianapolis, for appellees.
LOWDERMILK, Judge.
This case was transferred to this office from the Second District in order to help eliminate the disparity in caseloads among the Districts.

STATEMENT OF THE CASE
This is a medical malpractice action in which plaintiffs-appellants Arthur A. Brook (Arthur) and his daughter, Tracy Lynn Brook (Tracy), appeal from a judgment in favor of defendants-appellees St. John's Hickey Memorial Hospital, Dr. Guy E. Ross, Dr. Lawrence Allen, and Dr. Warren E. Fischer.

FACTS
Dr. Ross, a licensed physician specializing in pediatrics, first saw Tracy, then 23 months old, on September 18, 1969. Tracy's mother told Dr. Ross that Tracy had been having unexplained instances of recurrent fever and that she had been choking on mucus.
Dr. Ross examined Tracy and found no evidence of illness. Suspecting that Tracy might have had an allergy Dr. Ross prescribed an antihistamine.
Dr. Ross next saw Tracy on October 23, 1969. At that time Tracy had a stomachache and body temperature of 105°. Tracy had had five recent attacks of fever and vomiting. Also she had been unable to urinate for more than twelve hours.
During the examination Dr. Ross found that Tracy had a rectal temperature of 103.6° and abnormal lung sounds at the base of both lungs. Based upon his findings Dr. Ross made a diagnosis of pneumonitis and recurrent pyelonephritis, which is a kidney or urinary tract disorder and suggested that Tracy be hospitalized for treatment and for further tests.
At the hospital a chest X-ray was administered, and urine and throat specimens were taken and analyzed. The nurses were instructed to administer penicillin, as prescribed by Dr. Ross, and to carefully observe and note the times and frequency of Tracy's urination.
Tracy's urine was abnormal in that it showed the presence of 40 to 45 white blood cells, normal being about 0 to 6. Such an elevated amount of white blood cells in the urine is indicative of a urinary tract infection.
While Tracy was in the hospital, Dr. Ross attempted to catheterize Tracy in order to obtain a urine specimen, but in the process he found evidence which gave him cause to suspect that Tracy had a vesical-vaginal fistula, that is, an opening directly from the bladder to the vagina. Dr. Ross consulted with Dr. Allen, a urologist, and together they determined that because of her urinary tract problems and her suspected fistula Tracy should undergo an intravenous pyelography (IVP), which involves the injection of a contrast medium into a vein or muscle so that an X-ray can be taken, wherein the kidneys and urinary tract are highlighted.
Dr. Fischer, a radiologist, injected the contrast medium into the calves of both of Tracy's legs, because he was unable to find a vein which he could use. The package insert, which contained the manufacturer's directions for injecting the contrast medium, recommended that the contrast medium be injected into the gluteal muscles (buttocks). Dr. Fischer had read articles in medical journals which warned against making intramuscular injections into the buttocks or thighs especially in tiny children, because possible nerve and muscle damage could result. That is why Dr. Fischer chose to inject the contrast medium into the calves of Tracy's legs, because, after the buttocks and the thighs, they were the next largest muscle mass away from the trunk of the body.
A short while after being discharged from the hospital Tracy began to have trouble with her right leg. Her leg was stiff *267 and her heel began to lift off the ground. Tracy's problem was later diagnosed as a shortening of the achilles tendon, which may have been precipitated by some kind of trauma to her ankle or calf muscle. After two operations and other expensive treatment, including the wearing of a leg brace, Tracy's problem was substantially corrected.
Tracy and her father, Arthur, have brought this suit alleging malpractice on the part of the defendants in ordering, administering, and supervising the giving of the IVP which, the Brooks allege, resulted in the injury to Tracy's leg.

ISSUES
1. Whether the verdict of the jury in favor of Dr. Guy E. Ross and Dr. Lawrence Allen was contrary to law.
2. Whether the trial court erred in refusing to give Plaintiff's Tendered Instruction No. 5 to the jury.
3. Whether the trial court erred in refusing to give Plaintiff's Tendered Instruction No. 1 to the jury.
4. Whether the trial court erred in giving Dr. Ross' Instructions Nos. 2, 3, and 4 to the jury.
5. Whether the trial court erred in giving Dr. Fischer's Instructions Nos. 4 and 5.
6. Whether the trial court erred in granting St. John's Hickey Memorial Hospital's motion for judgment on the evidence.
7. Whether the trial court erred in refusing to give Plaintiff's Tendered Instruction No. 4 to the jury.
8. Whether the verdict in favor of Dr. Warren E. Fischer was contrary to law.

DISCUSSION AND DECISION

Issue One
The Brooks' contend that the verdict of the jury in favor of Doctors Ross and Allen was contrary to law in that they contend that the evidence is without conflict and can only lead to one conclusion, that Doctors Ross and Allen negligently diagnosed Tracy's malady as a vesical-vaginal fistula, and that Doctors Ross and Allen ordered an unnecessary X-ray examination, which resulted in injury to Tracy's leg when the contrast medium was injected into her calf.
We hold that the jury's verdict was not contrary to law because the evidence most favorable to the appellees indicates that Tracy's symptoms were compatible with a diagnosis of some kind of urinary tract disorder and that where a physician has reason to believe that a urinary tract infection or disorder exists, then an IVP is a highly recommended procedure, if not a required one. There is expert testimony from several doctors which would indicate that in light of Tracy's symptoms and case history, Doctors Ross and Allen were following standard medical procedure in recommending that Tracy undergo an IVP.
There is also testimony from Dr. Newman, who specializes in urological problems in children, that although an IVP would not have helped in substantiating the existence of a vesical-vaginal fistula, if indeed one did exist, the IVP which Doctors Ross and Allen had ordered was, nevertheless, required because of Tracy's case history and other symptoms. Therefore, the accuracy of Ross' and Allen's diagnosis of a suspected vesical-vaginal fistula is not relevant to the case at bar. In light of the evidence which was presented at trial the verdict in favor of Doctors Ross and Allen is not contrary to law. See Pokraka v. Lummus Co. (1952), 230 Ind. 523, 532, 104 N.E.2d 669.

Issue Two
The Brooks contend that the trial court erred in refusing to give Plaintiff's Tendered Instruction No. 5, which states that if, in fact, the jury found Doctors Ross and Allen to be negligent in ordering the IVP, then Doctors Ross and Allen would be liable for all foreseeable damages.
In view of the fact that the damages issue in the instruction was conditioned upon a finding that Doctors Ross and Allen were negligent, and in view of our holding that the jury's verdict in favor of Doctors *268 Ross and Allen was not contrary to law, we need not consider the merits of Plaintiff's Tendered Instruction No. 5, because any error which may have been committed would have been rendered harmless. See Adkins v. Poparad (1943), 222 Ind. 16, 51 N.E.2d 476, and Kosanovic v. Ivey (1968), 142 Ind. App. 481, 235 N.E.2d 501.

Issue Three
The Brooks contend that the trial court erred in refusing to give to the jury Plaintiff's Tendered Instruction No. 1 which reads as follows:
"When an accident happens, resulting in injury to a person, where it appears that the instrumentalities that caused it were unknown to such person and were under the exclusive control or management of a defendant or defendants, and the accident is such that under the ordinary course of things it would not occur if those who have control and management used reasonable and ordinary care, then, in the absence of evidence to the contrary, this would be evident that the accident occurred from the lack of reasonable and ordinary care. In such case the happening of the accident creates the presumption of negligence; on the face of it, it makes a case for the plaintiff because the thing is said to speak for itself. The defendant may then come forward with evidence to show that notwithstanding such presumption against him, the thing was not in fact caused by his negligence. Then the jury must weigh all of the evidence on the subject, and finally determine whether the plaintiff has proved the negligence alleged in the complaint by a preponderance of the evidence."
In Carpenter v. Campbell (1971), 149 Ind. App. 189, 271 N.E.2d 163, 166-7, the doctrine of res ipsa loquitur, as it applies in the practice of medicine, is explained as follows:
"Medicine is an inexact science and serious complications, even death, arising from the practice thereof should not in most situations be properly chargeable to a physician without proof of some negligent act. To hold otherwise would require physicians to insure rapid and proper recovery by their patients from any and all surgical and postoperative treatment... . To apply the doctrine of res ipsa loquitur in all cases where an unexpected rec[s]ult occurs would stifle the necessary development of medical science. ...
As a general proposition it may be stated that the doctrine of res ipsa loquitur permits negligence to be inferred from the unusual character of an injury suffered when it occurs while a patient and his actions or reactions are under a doctor's care and exclusive control. For the doctrine to be applicable, the injury must be of a character which would not occur but for an act of negligence and it must be caused by an agency or instrumentality within the exclusive control of the physician. In the last analysis, res ipsa loquitur is an evidentiary doctrine  a mere method of proof. It is premised upon an assumption that in certain instances an occurrence is so unusual that absent a reasonable justification those in control of the situation should be held responsible. (Our insert) (Our emphasis) (Citations omitted)
The Brooks contend that Tracy was under the exclusive control of the defendant physicians and the hospital staff, and that the injury to Tracy's leg would not have occurred but for an act of negligence on the part of one or more of the defendants. We do not agree.
There was ample evidence presented at trial which revealed that any intramuscular injection could cause nerve or muscle damage at the site of the injection. Therefore, the fact that Tracy's calf muscle may have been traumatized by an injection of contrast medium does not necessarily give rise to a presumption that such trauma was precipitated by an act of negligence. In Carpenter v. Campbell, supra, at 167-8, 271 N.E.2d 163, this court held that injury or infection which follows standard medical treatment cannot, through use of the doctrine *269 of res ipsa loquitur, give rise to a presumption of negligence, when the evidence indicates that such injury or infection could occur in the absence of negligence. Therefore, we hold that in light of the facts in the case at bar, the doctrine of res ipsa loquitur does not apply, and we further hold that the trial court did not err in refusing to give to the jury Plaintiff's Tendered Instruction No. 1.

Issues Four and Five
We have carefully examined Dr. Ross' Instructions Nos. 2, 3, and 4 and Dr. Fischer's Instructions No. 4 and 5, all of which were given by the court and objected to by the Brooks, and have determined that all of the instructions which were given were correct statements of the law and that the trial court did not err in giving such instructions to the jury, except as to Dr. Fischer's Instruction No. 4, which was not supported by the evidence in the case at bar.
Dr. Fischer's Instruction No. 4 is obviously a correct statement of the law in that it embodies the concept that, since a parent's right to recover is derived from that of the child, a parent cannot recover damages for an injury to his child unless the child first establishes that she was injured as a result of the negligence of the defendant, and can, therefore, recover from that defendant. However, in the case at bar there is more than one defendant, and the instruction was worded to include only Dr. Fischer as a defendant, and not Doctors Ross and Allen. As a result the instruction did not conform to the evidence.
We must point out, however, that the Brooks have waived any error which was committed by the court in giving Dr. Fischer's Tendered Instruction No. 4 in that the Brooks failed to object to such instruction at trial on the theory that the instruction did not conform to the evidence.[1] Also the Brooks have waived their objection that the instruction was unclear and confusing to the jury by their failure to tender another instruction which would have enabled the jury to more clearly understand the concepts embodied in Dr. Fischer's Instruction No. 4.[2]

Issue Six
The Brooks contend that the trial court erred in granting St. John's Hickey Memorial Hospital's motion for judgment on the evidence in that there existed an issue of material fact[3] as to whether one of the hospital employees was negligent in failing to recognize and report to the hospital administrators any departure from standard injection sites for the contrast medium during an IVP which may have been made by Dr. Fischer.
We have been presented with no evidence which could reasonably lead to the conclusion that an employee of the hospital was negligent in failing to recognize and report to the hospital administration any abnormal injection site selections which may have been made by Dr. Fischer prior to October 1969, when he injected contrast medium into the calf of Tracy's leg.
There is evidence that a qualified X-ray technician was always present when Dr. Fischer made an injection of contrast medium into a patient prior to the taking of an X-ray. However, there is no evidence from which a reasonable inference can be drawn that an X-ray technician in St. John's Hickey Memorial Hospital prior to and during October 1969 knew all of the proper injection sites for contrast medium. There was one statement made by a Dr. Schultheis wherein he speculated that a radiation technician should know the proper sites for injecting a contrast medium, however there is no evidence upon the crucial fact that a radiation technician would know that an *270 injection of contrast medium for an IVP into the calf of the leg might not be in compliance with standard medical practice. Also there is no evidence nor does there exist any reasonable inference from the evidence which would lead to the conclusion that the radiation technicians, employed by St. John's Hickey Memorial Hospital, knew anything about injection site selection for the contrast medium used in an IVP.
In view of the fact that there is no evidence that the radiation technicians of St. John's Hickey Memorial Hospital knew that the injection site chosen by Dr. Fischer may have been anything other than appropriate, we hold that there is no issue of material fact and that the evidence is insufficient, as a matter of law, from which it could be reasonably inferred that one or more of those technicians breached a duty of care owed to Tracy in failing to recognize and report to the hospital administration any abnormal injection procedures which may have been utilized by Dr. Fischer.

Issues Seven and Eight
The Brooks contend that the trial court erred in refusing to give to the jury Plaintiff's Tendered Instruction No. 4 which reads as follows:
"You are instructed that a Radiologist is not limited to the most generally used of several modes of procedure and the use of another mode known and proved by the profession is proper, but every new method of procedure should pass through an experimental stage in its development and a Radiologist is not authorized in trying untested experiments on patients."
We agree with the Brooks that the trial court committed reversible error in refusing to give Plaintiff's Tendered Instruction No. 4. Such instruction is a correct statement of the law,[4] and is supported by evidence from which it could be reasonably inferred that the injection of a contrast medium into the calf of the leg for an IVP was an experimental procedure. The evidence showed that although Dr. Fischer had previously used the same procedure on other children, the procedure had never been recommended or approved by any medical journal or by any other doctor.
Since one of the theories of the Brooks' case was that Dr. Fischer was negligent in choosing an injection site which had not been specifically recommended by or approved by the medical community, it follows that the failure of the trial court to give a correct instruction on the Brooks' theory of the case was reversible error[5] as to Dr. Fischer.
In view of the fact that we have determined that the trial court committed reversible error as to Dr. Fischer, we need not decide whether the verdict of the jury in favor of Dr. Fischer was contrary to law.
Judgment affirmed as to Dr. Ross, Dr. Allen and St. John's Hickey Memorial Hospital, but reversed and remanded for a new trial as to Dr. Fischer.
ROBERTSON, C.J., and LYBROOK, J., concur.
NOTES
[1] See Ind.Rules of Procedure, Trial Rule 51(C), Scott v. Krueger (1972), 151 Ind. App. 479, 280 N.E.2d 336, and Conley v. Lothamer (1971), 150 Ind. App. 356, 276 N.E.2d 602.
[2] See City of Terre Haute v. Deckard (1962), 243 Ind. 289, 183 N.E.2d 815 and Lawrence v. Pennsylvania Railroad Company (1962), 133 Ind. App. 435, 181 N.E.2d 647.
[3] See Ind. Rules of Procedure, Trial Rule 50(A).
[4] See Board of Medical Registration and Examination of Indiana v. Kaadt (1948), 225 Ind. 625, 76 N.E.2d 669.
[5] See Pierce v. Clemens (1943), 113 Ind. App. 65, 46 N.E.2d 836.