ARTHUR A. BROOK AND TRACY LYNN BROOK *v.* ST. JOHN'S HICKEY MEMORIAL HOSPITAL, GUY E. ROSS, LAWRENCE ALLEN AND WARREN E. FISCHER.

[No. 978S187. Filed September 13, 1978.]

*J. Conrad Maugans, Bayliff, Harrigan, Cord & Maugans,* of Kokomo, *Michael E. Tancey,* of Elwood, *Douglas D. Church, Roberts, Church & Beerbower,* of Noblesville, for appellants.

*Michael A. Bergin, Locke, Reynolds, Boyd & Weisell,* of Indianpolis, for appellee St. John's, *John P. Price, Jon D. Krahulik, Robert C. Wolf, Bingham Summers Welsh & Spilman,* of Indianapolis, for appellees Allen and Fischer, *Ralph A. Cohen, Ice Miller Donadio & Ryan,* of Indianapolis, for appellee Ross.

HUNTER, J.—This case is before us on the petition to transfer of Warren E. Fischer, M.D. The Court of Appeals, First District, in *Brook* v. *St. John's Hickey Mem. Hosp.,* (1977) Ind. App., 368 N.E.2d 264, reversed a jury verdict in Dr. Fischer's favor. The Court of Appeals held that the trial court committed reversible error in failing to give certain of the plaintiffs' tendered instructions and ordered a new trial as to Dr. Fischer on that basis. We have granted transfer on the petition of Dr. Fischer. We find that the Court of Appeals committed error in reversing the judgment of the trial court as to Dr. Fischer and hereby affirm the trial court.

This case began as an action by Tracy Lynn Brook and her father (Arthur) against St. John's Hickey Memorial Hospital, Guy E. Ross, M.D., Lawrence Allen, M.D., and Dr. Fischer. The record discloses that Tracy was diagnosed by a specialist as having a possible urological disorder and that X-rays taken

with a contrast medium would be necessary to confirm the diagnosis. The Court of Appeals summarized Dr. Fischer's role in Tracy's treatment as follows:

> "Dr. Fischer, a radiologist, injected the contrast medium into the calves of both of Tracy's legs, because he was unable to find a vein which he could use. The package insert, which contained the manufacturer's directions for injecting the contrast medium, recommended that the contrast medium be injected into the gluteal muscles (buttocks). Dr. Fischer had read articles in medical journals which warned against making intramuscular injections into the buttocks or thighs especially in tiny children, because possible nerve and muscle damage could result. That is why Dr. Fischer chose to inject the contrast medium into the calves of Tracy's legs, because after the buttocks and the thighs, they were the next largest muscle mass away from the trunk of the body.

> "A short while [four months later] after being discharged from the hospital Tracy began to have trouble with her right leg. Her leg was stiff and her heel began to lift off the ground. Tracy's problem was later diagnosed as a shortening of the achilles tendon, which *may* have been precipitated by some kind of trauma to her ankle or calf muscle. After two operations and other expensive treatment, including the wearing of a leg brace, Tracy's problem was substantially corrected." 368 N.E.2d 264, 266, 267 [emphasis added].

The jury returned a favorable verdict to all the defendants and the Brooks appealed on eight issues:

1. Whether the verdict of the jury in favor of Dr. Guy E. Ross and Dr. Lawrence Allen was contrary to law;

2. Whether the trial court erred in refusing to give plaintiffs' tendered instruction No. 5 to the jury;

3. Whether the trial court erred in refusing to give plaintiffs' tendered instruction No. 1 to the jury;

4. Whether the trial court erred in giving Dr. Ross's instructions Nos. 2, 3, and 4 to the jury;

5. Whether the trial court erred in giving Dr. Fischer's instructions Nos. 4 and 5;

6. Whether the trial court erred in granting St. John's

Hickey Memorial Hospital's motion for judgment on the evidence;

7. Whether the trial court erred in refusing to give plaintiffs' tendered instruction No. 4 to the jury; and

8. Whether the verdict in favor of Dr. Warren E. Fischer was contrary to law.

## Issues One - Five

The Court of Appeals upheld the verdict as to all the defendants except Dr. Fischer. The Court found no reversible error in issues one through five. As we agree with the Court of Appeals' disposition of these issues, we incorporate their opinion on these issues by reference herein. (See Appendix.)

## Issue Six

While we approve of the affirmance of the trial court by the Court of Appeals on issue six, we feel compelled to clarify the reasons for reaching this result. The Brooks contend that the trial court erred in granting St. John's Hickey Memorial Hospital's motion for judgment on the evidence in that there existed an issue of material fact as to whether one of the hospital employees was negligent in failing to recognize and report to the hospital administrators any departure from standard injection which may have been made by Dr. Fischer.

There is evidence that a qualified X-ray technologist was always present when Dr. Fischer made an injection of contrast medium into a patient prior to the taking of an X-ray. However there was no evidence which could reasonably lead to the conclusion that the technologists were qualified by any training to know the propriety of injection sites chosen by the licensed radiologist. There was no evidence that the technologists were required to be licensed at that time. All that is required at present is that technologists employed after August 1, 1977, be graduates of a two-year program. Ind. Adm. R. and Reg. § (16-10-1-12)-A28-4 (Burns Supp. 1978).

The testimony of the plaintiffs' expert, who was licensed as both an attorney and a medical doctor, was *pure* speculation as to the extent of the training or knowledge of any specific technologist at St. John's. This testimony was sophistic in nature—plausible but fallacious—for the record shows that the judgmental decisions were to be made by the licensed radiologists and not the technologists.

In view of the fact that there is no evidence that the technologists at St. John's Hickey Memorial Hospital knew that the injection site chosen by Dr. Fischer may have been anything other than appropriate, we hold that there is no issue of material fact and that the evidence is insufficient, as a matter of law, to find any negligence of hospital employees in failing to recognize and report any departure from normal practices which may have been utilized by Dr. Fischer. There was therefore no proof of liability on the part of St. John's Hickey Memorial Hospital and there was no error in granting the Hospital's motion for judgment on the evidence.

### Issue Seven

In issue seven, the Brooks contended that the trial court erred in refusing to give to the jury plaintiffs' tendered instruction No. 4 which reads as follows:

> "You are instructed that a Radiologist is not limited to the most generally used of several modes of procedure and the use of another mode known and proved by the profession is proper, but every new method of procedure should pass through an experimental stage in its development and a Radiologist is not authorized in trying untested experiments on patients."

The Brooks alleged that Dr. Fischer was negligent in choosing an injection site which had not been specifically recommended by the medical community and that this choice of an unusual injection site was a medical experiment. The trial court refused to give this instruction on the basis that since no substantial evidence of a medical experiment had been introduced,

it would be erroneous to give an instruction covering medical experiments. We agree.

The Court of Appeals found that since there was no evidence presented which showed that any other doctors had used the calf muscles as an injection site, Dr. Fischer's use of them may have been a medical experiment. We disagree. The record clearly shows that Dr. Fischer had several compelling, professional reasons for choosing the calf muscles as an injection site for the contrast medium in this case.

First, the record shows that Dr. Fischer had read medical journals which cautioned against the injection of the contrast medium into the buttocks (gluteal area) and thighs of infants and small children. One article from the *Journal of the American Medical Association*, which was introduced into the record, specifically warns:

> "Anyone concerned with infants and children must be aware that injection into the buttock may cause paralysis in the lower extremity. It is not often recognized that serious sciatic nerve injury can result from intragluteal administration of therapeutic and prophylactic agents. Injection injury of the sciatic nerve is more common than supposed and may be responsible for paralytic deformities which may be misdiagnosed as congenital club feet or the sequelae of poliomyelitis. The newborn infant, and especially the small premature infant, is more likely to suffer from this complication. Any age group is vulnerable, and injury may result from a solitary injection. By abandoning the intragluteal site and choosing another area for intramuscular injections, physicians may spare their patients unnecessary handicaps." J.A.M.A., July 23, 1960, SCIATIC NERVE INJURY IN INFANTS, p. 1336.

Tracy Brook was only twenty-three months old when the injection was given. Dr. Fischer testified that other articles had also warned against the use of the thighs in young children. Because Dr. Fischer was trying to avoid any damage to the sciatic nerve, he chose the next largest muscle mass "away from the trunk" as the site for the injection.

Second, Dr. Fischer had used this injection site successfully on children on prior occasions. He also testified that he had

never read or heard anything that proscribed the selection of the calf muscles as an injection site.

Too often courts have confused judgmental decisions and experimentation. Therapeutic innovation has long been recognized as permissible to avoid serious consequences.[1] The everyday practice of medicine involves constant judgmental decisions by physicians as they move from one patient to another in the conscious institution of procedures, special tests, trials and observations recognized generally by their profession as effective in treating the patient or providing a diagnosis of a diseased condition. Each patient presents a slightly different problem to the doctor. A physician is presumed to have the knowledge and skill necessary to use some innovation to fit the peculiar circumstances of each case.

Thus, the choice of the calf muscles as the site for the injection of a contrast medium in a two-year old child, based upon prior successful uses of this same injection site, is not a medical experiment where the use of more common sites had been warned against and where it was reasonably and prudently calculated by the physician [radiologist] to accomplish the intended purpose of diagnosis of the patient's condition.

The plaintiffs further contend that the refused instruction was a correct statement of the law since it was extracted almost verbatim from a 1948 Indiana case, *Board of Medical Registration and Examination* v. *Kaadt*, (1948) 225 Ind. 625, 76 N.E.2d 669. The *Kaadt* case can be readily distinguished as it dealt with a license revocation, not alleged negligence, and focused on the "gross immorality" and quackery of a scheme by Kaadt entailing a kind of snake oil cure which defrauded and injured diabetics.

---

1. "[E]ven where there is an established mode of treatment, the physician may be permitted to innovate somewhat if he can establish that, in his best judgment, this was for the benefit of his patient and where the established mode of treatment have proved unsuccessful." [Footnotes omitted.] 1 LAWYERS' MEDICAL CYCLOPEDIA, (1966) § 2.48, pp. 131-132.

Although it is proper to use extracts from an opinion of the Supreme Court in an instruction, the bare fact that the language comes from an opinion of this Court does not make it, *ipso facto,* appropriate in a case with different issues and different facts involved. Since the instruction in the instant case dealt with an issue which had not been supported by any evidence, it was not erroneous for the trial court to refuse it. A requested instruction is properly given where it relates to the issues in the case and is supported by the evidence. *Strickland* v. *State,* (1977) 265 Ind. 664, 359 N.E.2d 244; *Hash* v. *State,* (1972) 258 Ind. 692, 284 N.E.2d 770.

In this case, the trial judge properly gave an instruction which correctly informed the jury of a physician's duties:

"A plaintiff may not recover for alleged malpractice in an action against a physician, whether he be a general practitioner or a specialist, unless he proves by a preponderance of the evidence that the defendant physician deviated from the standards of practice utilized under like circumstances by the physicians in the same or similar localities who treat the particular type of ailment or injury involved. In determining what the standard of practice is, you must consider only the expert testimony by the physician witnesses, including the defendants. You may not guess or speculate as to the standard of medical practice and you may not set up your own standards unrelated to the expert testimony."

It was not erroneous for the trial court to refuse to give another instruction which emphasized one aspect of a physician's duties which had not been supported by the evidence in the case. This would have been misleading or confusing to the jury. A trial court's refusal to give a tendered instruction will be reversed only if, considering the evidence in the case, the substance of the instruction was required to be given and was not adequately covered by other instructions which were given. *Hash, supra; Maxey* v. *State,* (1969) 251 Ind. 645, 244 N.E.2d 650. The jury was fully and adequately instructed as to a physician's duties and there was no error in refusing plaintiffs' tendered instruction No. 4.

## Issue Eight

The plaintiffs finally allege that the verdict of the jury in favor of Dr. Fischer was contrary to law. We do not agree. Dr. Fischer had read warnings against injecting the contrast medium into the gluteal and thigh areas of infants and young children. He had previously used the calf muscle as an injection site on young children with success. He had not read any proscriptions against this area. This was sufficient evidence of probative value for the jury to find that he was not negligent in exercising his professional judgment in Tracy's case and choosing the calf muscles as an injection site. The verdict of the jury in favor of Dr. Fischer was not contrary to law.

We grant transfer and vacate the opinion of the Court of Appeals on issues seven and eight, adopt it insofar as it has been incorporated in this opinion on issues one through five, and adopt the ultimate holding in issue six as rewritten and modified by this opinion.

The judgment of the trial court is in all respects affirmed.

Givan, C.J., DeBruler, Prentice and Pivarnik, JJ., concur.

## APPENDIX

*Brook v. St. John's Hickey Memorial Hospital,* (1977) Ind. App., 368 N.E.2d 264, 267-268.

## Issue One

■ The Brooks' contend that the verdict of the jury in favor of Doctors Ross and Allen was contrary to law in that they contend that the evidence is without conflict and can only lead to one conclusion, that Doctors Ross and Allen negligently diagnosed Tracy's malady as a vesical-vaginal fistula, and that Doctors Ross and Allen ordered an unnecessary X-ray examination, which resulted in injury to Tracy's leg when the contrast medium was injected into her calf.

We hold that the jury's verdict was not contrary to law because the evidence most favorable to the appellees indicates

that Tracy's symptoms were compatible with a diagnosis of some kind of urinary tract disorder and that where a physician has reason to believe that a urinary tract infection or disorder exists, then an IVP is a highly recommended procedure, if not a required one. There is expert testimony from several doctors which would indicate that in light of Tracy's symptoms and case history, Doctors Ross and Allen were following standard medical procedure in recommending that Tracy undergo an IVP.

There is also testimony from Dr. Newman, who specializes in urological problems in children, that although an IVP would not have helped in substantiating the existence of a vesical-vaginal fistula, if indeed one did exist, the IVP which Doctors Ross and Allen had ordered was, nevertheless, required because of Tracy's case history and other symptoms. Therefore, the accuracy of Ross' and Allen's diagnosis of a suspected vesical-vaginal fistula is not relevant to the case at bar. In light of the evidence which was presented at trial the verdict in favor of Doctors Ross and Allen is not contrary to law. See *Pokraka* v. *Lummus Co.*, (1952) 230 Ind. 523, 532, 104 N.E.2d 669.

### Issue Two

■ The Brooks contend that the trial court erred in refusing to give Plaintiff's Tendered Instruction No. 5, which states that if, in fact, the jury found Doctors Ross and Allen to be negligent in ordering the IVP, then Doctors Ross and Allen would be liable for all foreseeable damages.

In view of the fact that the damages issue in the instruction was conditioned upon a finding that Doctors Ross and Allen were negligent, and in view of our holding that the jury's verdict in favor of Doctors Ross and Allen was not contrary to law, we need not consider the merits of Plaintiff's Tendered Instruction No. 5, because any error which may have been committed would have been rendered harmless. See *Adkins* v. *Poparad,* (1943) 222 Ind. 16, 51 N.E.2d 476, and *Kosanovic* v. *Ivey,* (1968) 142 Ind. App. 481, 235 N.E.2d 501.

## Issue Three

■ The Brooks contend that the trial court erred in refusing to give to the jury Plaintiff's Tendered Instruction No. 1 which reads as follows:

"When an accident happens, resulting in injury to a person, where it appears that the instrumentalities that caused it were unknown to such person and were under the exclusive control or management of a defendant or defendants, and the accident is such that under the ordinary course of things it would not occur if those who have control and management used reasonable and ordinary care, then, in the absence of evidence to the contrary, this would be evident that the accident occurred from the lack of reasonable and ordinary care. In such case the happening of the accident creates the presumption of negligence; on the face of it, 'it makes a case for the plaintiff because the thing is said to speak for itself.' The defendant may then come forward with evidence to show that notwithstanding such presumption against him, the thing was not in fact caused by his negligence. Then the jury must weigh all of the evidence on the subject, and finally determine whether the plaintiff has proved the negligence alleged in the complaint by a preponderance of the evidence."

In *Carpenter* v. *Campbell*, (1971) 149 Ind. App. 189, 271 N.E.2d 163, 166-7, the doctrine of *res ipsa loquitur*, as it applies in the practice of medicine, is examined as follows:

"Medicine is an inexact science and serious complications, even death, arising from the practice thereof should not in most situations be properly chargeable to a physician without proof of some negligent act. To hold otherwise would require physicians to insure rapid and proper recovery by their patients from any and all surgical and postoperative treatment. . . . *To apply the doctrine of res ipsa loquitur in all cases where an unexpected rec[s]ult occurs would stifle the necessary development of medical science. . . .*

As a general proposition it may be stated that the doctrine of res ipsa loquitur permits negligence to be inferred from the unusual character of an injury suffered when it occurs while a patient and his actions or reactions are under a doctor's care and exclusive control. For the doctrine to be applicable, *the injury must be of a character which would not occur but for an act of negligence* and it must be caused by an agency or instrumentality within the exclusive

control of the physician. In the last analysis, res ipsa lo-quitur is an evidentiary doctrine—a mere method of proof. *It is premised upon an assumption that in certain instances an occurrence is so unusual that absent a reasonable justi-fication those in control of the situation should be held re-sponsible.* (Our insert) (Our emphasis) (Citations omitted)

The Brooks contend that Tracy was under the exclusive control of the defendant physicians and the hospital staff, and that the injury to Tracy's leg would not have occurred but for an act of negligence on the part of one or more of the de-fendants. We do not agree.

There was ample evidence presented at trial which revealed that any intramuscular injection could cause nerve or muscle damage at the site of the injection. Therefore, the fact that Tracy's calf muscle may have been traumatized by an in-jection of contrast medium does not necessarily give rise to a presumption that such trauma was precipitated by an act of negligence. In *Carpenter* v. *Campbell, supra,* 149 Ind. App. at 196, 271 N.E.2d 163, this court held that injury or infection which follows standard medical treatment cannot, through use of the doctrine of *res ipsa loquitur,* give rise to a presump-tion of negligence, when the evidence indicates that such in-jury or infection could occur in the absence of negligence. Therefore, we hold that in light of the facts in the case at bar, the doctrine of *res ipsa loquitur* does not apply, and we further hold that the trial court did not err in refusing to give to the jury Plaintiff's Tendered Instruction No. 1.

### Issues Four and Five

We have carefully examined Dr. Ross' Instructions Nos. 2, 3, and 4 and Dr. Fischer's Instructions No. 4 and 5, all of which were given by the court and objected to by the Brooks, and have determined that all of the instructions which were given were correct statements of the law and that the trial court did not err in giving such instructions to the jury, except as to Dr. Fischer's Instruction No. 4, which was not supported by the evidence in the case at bar.

282

Dr. Fischer's Instruction No. 4 is obviously a correct statement of the law in that it embodies the concept that, since a parent's right to recover is derived from that of the child, a parent cannot recover damages for an injury to his child unless the child first establishes that she was injured as a result of the negligence of the defendant, and can, therefore, recover from that defendant. However, in the case at bar there is more than one defendant, and the instruction was worded to include only Dr. Fischer as a defendant, and not Doctors Ross and Allen. As a result the instruction did not conform to the evidence.

■■ We must point out, however, that the Brooks have waived any error which was committed by the court in giving Dr. Fischer's Tendered Instruction No. 4 in that the Brooks failed to object to such instruction at trial on the theory that the instruction did not conform to the evidence.[1] Also the Brooks have waived their objection that the instruction was unclear and confusing to the jury by their failure to tender another instruction which would have enabled the jury to more clearly understand the concepts embodied in Dr. Fischer's Instruction No. 4.[2]

NOTE.—Reported at 380 N.E.2d 72.

---

1. See Ind. Rules of Procedure, Trial Rule 51(C), *Scott* v. *Krueger*, (1972) 151 Ind. App. 479, 280 N.E.2d 336, and *Conley* v. *Lothamer*, (1971) 150 Ind. App. 356, 276 N.E.2d 602.

2. See *City of Terre Haute* v. *Deckard*, (1962) 243 Ind. 289, 183 N.E.2d 815 and *Lawrence* v. *Pennsylvania Railroad Company*, (1962) 133 Ind. App. 435, 181 N.E.2d 647.