The POOR SISTERS OF ST. FRANCIS SERAPH OF the PERPETUAL ADORATION, INC., d/b/a St. Elizabeth Hospital and St. Elizabeth Hospital Medical Center and W. L. Knochel, Appellants (Defendants below),

v.

Sharon CATRON, Appellee
(Plaintiff below).

No. 2–879A234.

Court of Appeals of Indiana,
Second District.

May 25, 1982.

James E. Rocap, Jr., Rocap, Rocap, Reese & Young, Indianapolis and Joseph T. Bumbleburg, Ball, Eggleston, Bumbleburg & McBride, Lafayette, for defendants-appellants The Poor Sisters of St. Francis Seraph of the Perpetual Adoration, Inc., d/b/a St. Elizabeth Hospital and St. Elizabeth Hospital Medical Center.

Larry R. Fisher, Stuart, Branigin, Ricks & Schilling, Lafayette, for defendant-appellant W. L. Knochel.

Howard S. Young, Jr., Young & Young, Indianapolis, for appellee.

SHIELDS, Judge.

Appellant, The Poor Sisters of St. Francis Seraph of the Perpetual Adoration, Inc., d/b/a St. Elizabeth Hospital and St. Elizabeth Medical Center (Hospital), appeals a jury verdict of $150,000 in favor of appellee, Sharon Catron.[1]

On appeal Hospital raises the issues of whether the trial court erred in failing to grant an Ind.Rules of Procedure, Trial Rule 50 motion made by Hospital at the close of all the evidence[2] and in giving Catron's requested final instruction no. 9.

We affirm.

Catron was brought to the emergency room of Hospital at approximately 3:40 a. m. on September 12, 1970. Catron was comatose, apparently as a result of an unintentional drug overdose, and her breathing was shallow. Knochel, the emergency room physician on duty when Catron was admitted, inserted an endotracheal tube to aid Catron's breathing. There were allegations at trial that the tube inserted by Knochel was too large but the jury's verdict in favor of Knochel has not been appealed, therefore we assume the lack of any actionable negligence by Knochel. Catron was admitted into the Intensive Care Unit (ICU) of Hospital under the care of her family physician, Ralph Weller. Weller kept the tube in place in Catron's throat as Catron was still comatose and unable to breathe on her own.

Five days later, on September 17, 1970 at about 10 a. m., Weller ordered a nurse to remove the tube. When the nurse reported she was unable to do so, Weller removed the tube. Later that day, when Catron began having difficulty breathing, Weller ordered a tracheostomy. Catron's condition improved and she was discharged from Hospital on September 23, 1970.

After her release from Hospital, Catron experienced further breathing difficulties which necessitated her return to the Hospital for another tracheostomy. Catron also experienced difficulty speaking and underwent several operations to remove scar tissue and open her voice box. These operations were unsuccessful. At the time of trial Catron could not speak above a whisper and she breathed partially through her nose and partially through a hole in her throat created by the tracheostomy.

Catron sued Knochel and Hospital for the negligent injury of her throat, vocal cords, and voice box by the endotracheal tube. After a lengthy trial the jury rendered a verdict of $150,000 against Hospital.

1. Appellant W. L. Knochel is a nominal party to this appeal since the jury found in his favor at trial.

2. Hospital also alleged error in the trial court's denial of a motion for judgment on the evidence made at the close of Catron's evidence in chief. Any error was waived when Hospital proceeded to present its evidence in chief. Indiana Rules of Procedure, Trial Rule 50(A); *Meadowlark Farms Inc. v. Warken*, (1978) Ind. App., 376 N.E.2d 122.

## I

A motion for judgment on the evidence should be granted only in the absence of evidence or reasonable inference on at least one essential element of the plaintiff's claim.

"The evidence must be without conflict and susceptible of but one inference, that being in favor of the moving party. In examining the evidence, the trial judge must draw all fair and rational inferences in favor of the party opposing the motion and give that party every favorable intendment of the evidence.... The court may not substitute its judgment for that of the jury on questions of fact nor grant the motion because the evidence decidedly preponderates in favor of the moving party."

*Hendrickson & Sons Motor Co. v. OSHA,* (1975) 165 Ind.App. 185, 207, 331 N.E.2d 743, 757 (citations omitted).

Our review of the trial court's ruling on a motion for judgment on the evidence is governed by the same standard. We are thus limited to reviewing the record to determine if there is any evidence which would justify submission of the case to the jury.

█ Hospital argues the motion was erroneously denied because the decision to treat a patient is a medical question, not ministerial; the time of removal of the endotracheal tube is one of medical judgment, not ministerial; the verdict against Hospital was based on the jury determination the tube remained in Catron for an excessive time, a medical judgment; Hospital is liable only if it was negligent in the commission of a ministerial act; therefore, Hospital cannot be liable because the injury resulted[3] from the exercise of medical judgment and not the breach of a ministerial duty by Hospital.

█ Unquestionably Hospital owed a duty to Catron. Hospital's requested final instruction no. 7 given by the trial court read as follows:

"Skilled hospital personnel have a duty to exercise reasonable care in administering services to patients in the hospital. If such personnel know that a licensed attending physician, without consultation, either by his failure to treat a patient or by treating a patient in a manner which is a substantial departure from accepted medical standards is endangering the health and life of said patient, then the hospital personnel have a duty to perform such acts as are within their authority to protect the health and life of said patient."[4]

Record at p. 217.

Because this instruction was given without objection, it becomes the law of the case. *Royer v. Pryor,* (1981) Ind.App., 427 N.E.2d 1112.

A hospital is liable for negligent acts of its employees which are done within the scope of their employment. *Estate of Mathes v. Ireland,* (1981) Ind.App., 419 N.E.2d 782; *South Bend Osteopathic Hospital v. Phillips,* (1980) Ind.App., 411 N.E.2d 387. Therefore, a breach of the duty described in the instruction will result in liability of Hospital.

As to the issue of breach of duty, Indiana courts have recognized the failure to recognize and report abnormalities in the treatment and condition of patients may constitute a breach of the duty of reasonable care on the part of hospital employees. *Brook v. St. John's Hickey Memorial Hospital,* (1978) 269 Ind. 270, 380 N.E.2d 72, 74. In *Brook* a radiologist injected a contrast medium into the calves of a patient. The injection, which was given in the presence of an x-ray technologist employed by St. John's, resulted in injury to the patient. In *Brook,* the suit against the hospital was dismissed because of the lack of evidence that the hospital employee who witnessed the injection

---

**3.** Any issue of proximate cause is waived by lack of specific argument and citation of authority. Ind.Rules of Procedure, Appellate Rule 8.3(A)(7).

**4.** Weller testified he did not consult with anyone concerning the endotracheal tube. (R. at 1115)

was trained to recognize proper injection sites. However, the Supreme Court did recognize in some cases the failure of hospital employees to "recognize and report any departure from normal practices" may amount to a breach of duty for which the hospital is liable. *Brook* at 75.

In the case of *Utter v. United Hospital Center Inc.*, (W.Va.1977) 236 S.E.2d 213, the plaintiff was admitted to the hospital with a broken wrist and dislocated elbow. A cast was put on the wrist and shortly thereafter the injured arm began to swell and turn black and the patient became delirious. Although the nurses observed the worsening condition of the patient and reported some of the symptoms to the physician, they did not report the delirium. When the doctor did nothing further, the nurses did not call the hospital authorities. The West Virginia Supreme Court, in reinstating a jury verdict against the hospital, stated:

"It is contended by the defendant hospital that the nurses contacted the treating physician and did all that their duties required; that they had no reason to believe that the patient was not receiving proper care. The question of the propriety of the action or inaction of the nurses is one to be decided by the jury under the evidence before it.

"The tenor of the defendant's contentions indicates that the nurses are being treated unfairly and that they should not be expected to heal the patient's ills. While registered nurses certainly are not charged with the responsibility of curing patients, they are charged with duties clearly reflected in the record. Nurses are specialists in hospital care who, in the final analysis, hold the well-being, in fact in some instances, the very lives of patients in their hands."

*Utter* at 216.

■ It is clear that, while in most cases the nursing staff is not negligent in following the orders given by the attending physician, an exception to this rule exists when the nurse or other hospital employee knows the doctor's orders are not in accordance with normal medical practice. *Toth v.*

*Community Hospital at Glen Cove*, (1968) 22 N.Y.2d 255, 292 N.Y.S.2d 440, 239 N.E.2d 368.

"At that point it became the nurses duty to inform the attending physician, and if he failed to act, to advise the hospital authorities so that appropriate action might be taken."

*Darling v. Charleston Community Memorial Hospital*, (1965) 33 Ill.2d 326, 333, 211 N.E.2d 253.

Thus, if a nurse or other hospital employee fails to report changes in a patient's condition and/or to question a doctor's orders when they are not in accord with standard medical practice and the omission results in injury to the patient, the hospital will be liable for its employee's negligence.

■ The record in this case contains testimony by an expert witness that nurses who work in Intensive Care Units and inhalation therapists are specially trained to handle patients who have endotracheal tubes inserted. Several witnesses testified that as a general rule endotracheal tubes should not be left in a patient longer than three or four days. The head nurse in the ICU at defendant Hospital admitted she knew the "rule of thumb" when working with endotracheal tubes was that the upper time limit for leaving them in place was three days. The inhalation therapist employed by Hospital who handled Catron's respirator also testified he knew the recommended guideline for leaving in endotracheal tubes was 48 to 72 hours. Another nurse in ICU testified it is the duty of a nurse to report any critical condition to the doctor in charge and, if he did nothing, then to report the condition to her supervisor.

Neither the nurses in ICU nor the inhalation therapists reported Weller's treatment of Catron to their supervisors although they were aware the endotracheal tube was being left in the patient longer than the customary three to four day period. Similarly, the nurses did not bring to Weller's attention the fact that the tube was being left in longer than usual.

We find the record sufficient to create a question for the jury on the issue of whether the nurses' and therapists' failure to question and report treatment not in accord with standard medical practice was a breach of Hospital's duty of reasonable care.

We find the trial court judge properly overruled Hospital's motion for judgment on the evidence.

## II

■ As its second allegation of error, Hospital argues the trial court erred in giving Catron's tendered final instruction No. 9 because this instruction contained an Indiana statute and regulations of the Indiana State Board of Health which presented issues outside the evidence in the case. Catron argues the instruction is a correct statement of the law and is supported by the evidence in the case. We find Hospital failed to preserve the error it argues on appeal in the giving of the instruction by the inspecificity of its objection to the instruction at trial. Indiana Rules of Procedure, Trial Rule 51(C). Hospital did object to the giving of the instruction by stating, "The instruction permits the jury to speculate on issues which are outside the evidence in this case and permits the jury to render a verdict upon facts not within the evidence of this case. The giving of a statute and/or regulations must pertain to the evidence. In this case there is no evidence in the record that the statute given in the first part of Instruction No. 9 or the regulations given in Regulation HHLf, HL7, subsections a, b, g, and Regulations HHL8, subsection h, were in any way violated and, therefore, such regulations are outside the evidence of this cause and permit the jury to speculate on matters which are not in the evidence and which have not been testified to by any witness in this cause." However, Hospital should have specified the issues presented in the instructions upon which there was a lack of evidence instead of merely listing all the statutes and regulations in the instruction and stating they did not apply. In the case of *Elgin, J. & E. Ry.*

*Co. v. Scherer*, (1951) 121 Ind.App. 477, 98 N.E.2d 369, a jury instruction contained verbatim copies of the complaint and answer and was objected to on the ground that "it submits issues to the jury on which no evidence has been introduced and which should be withdrawn from the jury." In *Elgin* the Indiana Appellate Court stated: "This objection does not point out the issues as to which appellant claimed no evidence was introduced. It is too general and indefinite to constitute a specific objection as required by [Supreme Court] Rule 1–7. Therefore no error with respect to the giving of this instruction is available." Supreme Court Rule 1–7 has been replaced by Indiana Trial Rule 51, but the requirement of a specific objection to jury instructions remains the same. *See Indiana Rules of Civil Procedure, Proposed Final Draft, Civil Code Study Commission*, (1968).

We find Hospital failed to preserve any error in the giving of Instruction 9.

Judgment affirmed.

MILLER, P. J., sitting by designation, concurs.

SULLIVAN, J., concurs in result.