PHYSICIANS EMERGENCY SERVICE, INC. *v.* JOSEPH C. McCARTHY AND PHILLIP D. HITCHCOCK

[No. 1-1274A189. Filed July 10, 1975.]

*John L. Carroll, Johnson, Carroll & Griffith,* of counsel, of Evansville, for appellant.

*John D. Clouse,* of Evansville, for appellees.

ROBERTSON, C. J.—This is an appeal from the judgment of the trial court ordering the defendant-appellant, Physicians Emergency Service, Inc., to provide a corporate accounting and twenty-five percent of the Corporation's net profits to plaintiffs-appellees, Doctors McCarthy and Hitchcock.

The single issue upon appeal is whether the evidence presented was sufficient to sustain the judgment.

We affirm.

The plaintiffs offered the only evidence presented in the case which consisted of their own testimony and that of another doctor not a party to the suit. The Corporation offered no evidence. This summary of facts is taken from the testimony of the three plaintiffs' witnesses.

The Physicians Emergency Service, Inc. (Corporation) is a professional medical corporation organized under the Indiana Medical Professional Corporation Act, IC 1971, 23-1-14-1 (Burns Code Ed.). The Corporation had contracted with the Evansville Deaconess Hospital to provide the hospital's emergency room services. In 1969 the Corporation placed an advertisement in a medical journal seeking additional physicians to handle the work load at the emergency room. Doctors Hitchcock and McCarthy answered the advertisement. Hitch-

cock and McCarthy came to Evansville and interviewed with Dr. Arendell, the president of the Corporation. They agreed to work as full time, emergency physicians at a yearly salary of approximately $40,000, starting work in the summer of 1969.

In March or April of 1970, the Corporation held a meeting to discuss the future of the Corporation. At this time there were only five doctors associated with the Corporation; Doctors Arendell and Boyle who actually owned the stock of the Corporation and Doctors Hitchock, McCarthy, and Patterson who were, at least up to this point, merely salaried employees of the Corporation. The discussion which took place at this 1970 meeting is critical to the resolution of this case.

The record shows that Dr. Arendell, the president of the Corporation stated that since the group appeared to be compatible and functioned well together that the other three physicians should be allowed to buy ownership of the Corporation on an equal basis. It was agreed among the five that Doctors Arendell and Boyle would set a fair price for their shares and the others would buy into the Corporation.

The doctors also discussed how the profits of the Corporation would be divided from that time on. It was agreed that the profits would be divided according to the amount of work performed by each doctor. Since Patterson, McCarthy, and Hitchcock worked full time they would get one-fourth. Arendell and Boyle worked half-time and would, therefore, split the other one-fourth share.

After this meeting, Hitchcock and McCarthy continued working for the Corporation and were at all times paid their proper salaries. However, neither the sale of stock nor the division of profits ever took place. Hitchcock and McCarthy requested that Arendell and Boyle set a price for the stock but were always told that this work was in the hands of an attorney, or accountant, or just wasn't completed. No price, terms, or manner of sale of the stock were ever established.

The relationship between the parties ended abruptly in 1973. During that year, Dr. Arendell distributed a contract to each of the three, non-shareholder doctors for their signature. The contracts provided that these doctors would be paid a salary of $42,000 for the next three years, and that the Corporation would provide various professional benefits. However, the contracts provided that these doctors would not be entitled to any portion of the Corporation's profits.

With the belief that this written contract was contrary to the terms of the 1970 agreement to split the profits, the three doctors informed Dr. Arendell that they would not sign the contract. They demanded an accounting from the Corporation and their share of the profits. Dr. Arendell told them that they were only employees of the Corporation and were not entitled to an accounting or division of profits. Shortly thereafter Patterson, McCarthy and Hitchcock terminated their relationship with the Corporation.

Hitchcock and McCarthy brought suit against the Corporation seeking an accounting, a share of the profits, and equal shares of the stock of the Corporation. At the end of their evidence, they moved to amend their complaint by deleting the request for stock of the Corporation. The motion was granted. The trial court entered judgment for Hitchcock and McCarthy ordering that each plaintiff was entitled to an accounting from the Corporation and twenty-five percent of the net profit of the Corporation from July 1, 1970, to the date of termination of employment of each plaintiff. The Corporation brings this appeal.

The Corporation contends that the evidence is not sufficient to support the judgment.

The trial court found that Hitchcock and McCarthy were entitled to a share of the profits of the Corporation. We are of the opinion that sufficient evidence was presented to sustain that determination.

Hitchcock and McCarthy testified that during the 1970 meeting it was agreed by the parties that the profits of the

Corporation would be divided according to the work performed by each of the five doctors involved in the emergency room services. This testimony was corroborated by the testimony of Doctor Patterson. It was agreed that Hitchcock, McCarthy and Patterson would each receive twenty-five percent of the net profits of the Corporation since these three doctors worked full time and that Arendell and Boyle would split the remaining twenty-five percent of the profits since they both worked only half-time. The Corporation offered no evidence to rebut this testimony. The three doctors continued to perform services for the Corporation, but never received any share of the profits.

This evidence was sufficient to establish an enforceable agreement to split the Corporation's profits and, thus, sustain the judgment of the trial court.

However, the discussion at the 1970 meeting also involved ownership of the stock of the Corporation. According to Hitchcock, McCarthy and Patterson, it was agreed that the stock of the Corporation should be transferred so that each doctor would be an equal shareholder. Arendell and Boyle, who held all of the Corporation's stock, were to set a price for their shares and the others were to buy into the Corporation on a equal basis.

Hitchcock and McCarthy had originally asked in their complaint that they be given equal shares of stock in the Corporation. However, the evidence they presented was not sufficient to establish the necessary elements of an agreement to sell stock in that no meeting of the minds ever occurred as to price, terms, or manner of sale. Thus, at the end of their evidence they successfully moved to amend their complaint by deleting the request for corporate stock.

The argument of the Corporation is directed toward the failure of the evidence to establish an enforceable agreement to transfer the stock. The Corporation contends that the court erred by ordering a division of profits when no enforceable agreement to sell the corporate stock was estab-

lished, since it was clear from the testimony given concerning the 1970 meeting that the doctors intended that the profits be split only if the transfer of stock was completed. The Corporation also argues that this was the theory of the original complaint and that Hitchcock and McCarthy could only recover upon that basis.

We find neither argument convincing.

First, as we have stated previously, there was sufficient evidence to support the trial court's determination that the agreement to split profits was not dependent upon the actual transfer of the stock of the Corporation, especially in light of the fact that the profits were to be split according to the time each doctor spent in the emergency room, not according to the respective shares of stock.

Second, a plaintiff's recovery is not limited by the original contents of his complaint, but by the evidence produced at trial. The Indiana Rules of Civil Procedure do not hold a plaintiff to the strict letter of his complaint, but provide that the pleadings may be amended at any time, even after judgment, to conform to the evidence actually produced at trial. Ind. Rules of Procedure, Trial Rule 15(B). As stated in *Ayr-Way Stores, Inc.* v. *Chitwood* (1973), 261 Ind. 86, 300 N.E.2d 335:

> "[T]he policy behind Trial Rule 15(B) is to promote relief for a party based upon the evidence actually forthcoming at trial, notwithstanding the initial direction set by the pleadings." 300 N.E.2d at 338.

In the present case the evidence produced at trial sufficiently established an agreement to split the profits of the Corporation. The trial court properly allowed amendment of the complaint to conform to that evidence and correctly entered judgment thereon.

Judgment affirmed.

Lowdermilk and Lybrook, JJ., concur.

NOTE.—Reported at 330 N.E.2d 380.