JACK JOY AND BETTY JOY *v.* ANDREW Y. S. CHAU

[No. 1-1176A223. Filed June 28, 1978. Rehearing denied August 29, 1978. Transfer denied December 29, 1978.]

---

*F. Boyd Hovde, Townsend, Hovde & Townsend*, of Indianapolis, for appellants.

*Patrick, Ratcliffe, Gabbert, Wilkinson, Goeller & Modesitt*, of Terre Haute, for appellee.

LYBROOK, P.J.—Jack Joy and Betty Joy, plaintiffs-appellants, appeal from the entry of judgment in favor of Dr. Andrew Y.S. Chau, defendant-appellee. The jury returned a verdict in favor of Chau in a medical malpractice action initiated against him by the Joys as a result of treatment rendered upon Jack Joy following an automobile accident.

The facts most favorable to Chau indicate that Jack Joy was a part-

time musician who had been so employed at the Eagles Lodge on the evening of December 11, 1970. During the early morning hours of December 12, 1970, Joy was involved in a one car accident in Terre Haute. As a result of that incident, Joy received a nasal fracture, fracture to the left hand, fracture of both maxillae (cheekbones), laceration of the upper lip, fracture of the right femur with marked deformity, compound fracture of the right ankle with a dirty wound, fracture of the left patella, right chest not breathing and swelling of both knees. This diagnosis was made by Dr. Chau in the emergency room the day of the accident. On January 5, 1971, Dr. Chau discovered that Joy also had a fracture of the right patella, but did not record this injury in the hospital chart or in the discharge summary.

Dr. Chau is a board certified surgeon whose practice basically consists of orthopedics, plastic and general surgery. During the course of Joy's treatment, Dr. Chau repaired the lip laceration, reduced the fracture of the left hand, reduced the nasal fracture, and repaired and reduced the fracture of the right ankle. The injury to the ankle and the accompanying laceration led to early knowledge that the ankle would probably be permanently painful or require fusion. After surgery, traction was applied to Joy's right leg to stabilize the femur. Dr. Chau intended to apply a spica cast (from the waist, around the body and down the right leg to the toes) after sufficient healing had occurred.

On December 22, 1970, Dr. Chau performed surgery on Joy's left patella, repairing the broken patella and stitching together the ruptured tendon. Although normal practice is to apply a cast to immobilize the leg following such surgery, because Joy was confined to bed, no cast was applied.

On January 2, 1971, Dr. Chau observed a rash on Joy's shoulders and back, and it was Chau's opinion that the rash was caused by perspiration and not infection.

On January 4, 1971, Dr. Chau had Joy's right femur x-rayed, performed a personal examination and determined that the callus formation was sufficient to prevent rotation or angulation of the femur. Thus, on January 5, 1971, Dr. Chau removed the cast from the right ankle, applied a long leg cast to the right leg, and removed the right leg from traction. Dr. Chau testified that the rash on Joy's back entered heavily

in his decision to apply the long leg cast at that time. He further testified that he normally leaves a broken femur in traction for eight weeks and then applies a spica cast, not a long leg cast. An X ray taken on January 5, 1971, showed an angulation of the femur which had not existed prior to the application of the long leg cast. This X ray also revealed a comminuted fracture of the right patella which Dr. Chau elected not to treat. At this time Dr. Chau knew the right femur would heal with a 25 to 30 degree rotation. Dr. Chau did not inform Joy of the broken right patella, the rotation of the femur, that additional surgery would be needed, and did not discuss the inter relationship of the three injuries to his right leg.

On January 12, 1971, Dr. Chau ordered Joy to physical therapy to begin weight bearing on his left leg.

In October, 1971, Joy was operated on by Dr. Harold Rosene who testified at the trial. Dr. Rosene indicated that he operated on both of Joy's knees, shortened the left patellar tendon, repaired the fracture to the right patella and repaired the right patellar tendons. In February, 1972, Dr. Rosene performed a second surgery on Joy. This surgery involved cutting the femur, correcting the rotation and alignment, attempting to lengthen the leg and placing two rods in the femur to stabilize the bone. On March 29, 1972, Dr. Rosene performed a fusion on Joy's right ankle.

Three expert witnesses, other than those previously mentioned, testified at the trial. They expressed varying views regarding the propriety of the treatment rendered by Dr. Chau in the management of Joy's injuries. All the physicians agreed that Joy has limited use of his right leg and more particularly his right knee. The Joys testified as to the damages resulting from Jack Joy's leg deformity.

Based upon the above evidence the jury returned a verdict in favor of Dr. Chau and against both Joys.

The appellants present the following issues for our review:

1.  Did the trial court err by giving the defendant's instruction number 2 to the jury?

2.  Did the trial court err by giving the court's final instructions numbers 4, 5 and 6?

3. Did the trial court err in refusing plaintiffs' instruction number 9?

4. Did the trial court err by refusing to give plaintiffs' instruction number 11?

I.

The first issue for our review concerns the propriety of the giving of defendant's instruction number 2. That instruction, in essence, stated that a physician is not bound to use any particular method of treatment; if, among physicians and surgeons of ordinary skill and learning, more than one method of treatment is recognized, it is proper for a doctor to adopt any recognized method of treatment. The instruction went on to say that the fact that another method of treatment existed, or that another physician would have used a different method does not establish negligence.

The first of the three objections to the above instruction asserts that it was an erroneous statement of the law and that it eliminated any duty of care which Dr. Chau may have owed Joy. The chief objection to the instruction appears to be that the jury was not informed that it must consider the facts and circumstances of this particular case in determining if Dr. Chau selected an appropriate method of treatment. While it may not be explicit in the instruction, it is implicit that the jury is to consider the evidence presented and thereby judge the acts of the treating physician in the particular setting of the case. All the evidence in the record pertained to Joy's treatment, or to treatment of injuries similar to Joy's; it is therefore proper to assume that the jury would use the instructions as a guide for reviewing the facts and circumstances which had just been presented to it during the trial. The instruction informed the jury that a physician is not bound to use one particular method of treating a patient when more than one method is recognized by the profession. This is a correct statement of the law. This rule of law was stated in *Board of Medical Registration and Examination v. Kaadt* (1948), 225 Ind. 625, 76 N.E.2d 669, as:

"A physician is not limited to the most generally used of several approved modes of treatment and the use of another mode known and approved by the profession is proper, . . ."

This rule was reaffirmed in the recent case of *Brook v. St. John's Hickey*

*Mem. Hosp.* (1977), 269 Ind. 270, 368 N.E.2d 264. While it is true that three of the expert witnesses expressed grave doubts about the treatment rendered to Joy's right leg, an additional expert testified that the treatment was appropriate considering all the surrounding facts and circumstances. The jury was therefore presented with conflicting opinions and evidence and was correctly instructed as to the duty of a physician in selecting his method of treatment.

The appellants' second assertion of error based on instruction number 2 contends that it is in conflict with the court's final instructions 4, 5 and 6 and with the plaintiffs' instructions 1 and 10 (both of which were given by the trial court). It is the appellants' contention that the instructions are in such conflict as to mislead the jury as to the applicable law. We must disagree. It is elementary that the instructions to the jury must be viewed as a whole and construed in harmony with each other, and it is not necessary for any one instruction to contain all the law applicable to the case. *Evans v. Breeden* (1975), 164 Ind.App. 558, 330 N.E.2d 116. When construed together the instructions are complimentary and not contradictory. They establish the duty owed to the plaintiff and the standard of care which Dr. Chau was required to maintain. The instructions further properly limited the evidence which the jury could consider in determining if Dr. Chau had breached the duty which he owed Joy.

Finally, the jury was instructed that it must construe all the instructions as a whole and in harmony, and consider the evidence in light of the instructions. When they are read as a whole, we can find no conflict in the instructions and therefore no prejudicial error which could have misled the jury. *Birdsong v. ITT Continental Baking Company* (1974), 160 Ind.App. 411, 312 N.E.2d 104.

The Joys next contend that the giving of the court's final instructions 4, 5, and 6 constituted reversible error. The common themes of the objections to each of the three instructions are as follows: first, the applicability of the "locality" rule in assigning the standard of care which Dr. Chau was required to mantain; and, secondly, the instructions referred to a doctor and not an orthopedic surgeon.

The appellants are correct in their assertion that each of the three instructions referred to the "doctor" without an indication that a medical

specialization was involved. However, an additional instruction very emphatically brought the appropriate standards to the attention of the jury. The court gave the plaintiffs' requested instruction which stated that Dr. Chau was required to possess the degree of skill and knowledge ordinarily possessed by physicians specializing in orthopedics. When all the instructions are read together as a whole, we find them to be complimentary and to provide the jury with the proper standards by which to test the actions of Dr. Chau, namely, those of an orthopedic surgeon. *Moore v. Rose-Hulman Institute of Technology* (1975), 165 Ind.App. 165, 331 N.E.2d 462.

Joys' second assertion of error in the giving of instructions 4, 5 and 6 stems from each of the instructions reference to "in the same or similar locality" as the measure of the standard of care to be applied to Dr. Chau's treatment of Joy. The appellants' argument is subdivided into two distinct subarguments: first, that no evidence was presented on the locality rule and therefore the giving of any instruction concerning that rule is reversible error; and secondly, that Dr. Chau was a specialist in orthopedic surgery and therefore not entitled to the protection provided by the locality rule.

The Joys are correct in asserting the general rule that instructions, on which there is no evidence, should not be given. *Ewing v. Timmons* (1963), 135 Ind.App. 274, 193 N.E.2d 497. However, it is not every incident of erroneous instruction which results in reversal. *Ewing, supra.* All the instructions given must be read as a whole and any instruction which is not applicable to the evidence will only be grounds for reversal where it appears that the complaining party was injured in his substantial rights. *Pennsylvania Ice & Coal Co. v. Elischer* (1939), 106 Ind.App. 613, 21 N.E.2d 436. Further, the instruction will be grounds for reversal only where it appears that the jury's verdict could have been predicated on the instruction. *Hendrickson & Sons Motor Co. v. Osha* (1975), 165 Ind.App. 185, 331 N.E.2d 743. In the case at bar there is a lack of evidence as to any possible variance in the standard of care or methods of treatment of broken femurs between physicians practicing in Terre Haute and Indianapolis. (All three of Joys' experts were Indianapolis surgeons.) While the Joys contend that the instruction placed additional weight on the defendant's expert witness (a Terre Haute orthopedic surgeon) we do not feel that the instruction

could have been the basis of the jury's verdict and we therefore find the lack of evidence pertaining to the given instruction to be harmless error.

The Joys next charge reversible error in the giving of the instruction because the "locality" rule is not applicable to physicians practicing a medical specialty. It is unquestioned that Dr. Chau was engaged in the practice of orthopedic surgery when he treated Joy. The alleged error asserts that the instructions limiting the standard of care to that of physicians practicing in the same or similar locality was an erroneous statement of the law. The "modified locality" rule is well entrenched in the law in Indiana. The Supreme Court of Indiana approved an instruction applying the modified locality rule to physicians practicing a medical specialty in *Worster v. Caylor* (1953), 231 Ind. 625, 110 N.E.2d 337. That rule has received approval from this court as recently as the case of *Basset v. Glock* (1977), 174 Ind.App. 439, 368 N.E.2d 18. It is clear that the instruction in question was a correct statement of the law in Indiana as it stands today, and as such no reversible error was committed in tendering the instruction.[1]

## III.

Joys' third allegation of error challenges the trial court's refusal of their tendered instruction number 9. This instruction stated that a physician has a legal duty to inform his patient, if the patient is in possession of his faculties and competent, of the nature and extent of his injuries, the proposed method of treatment, the reasons for selecting that method, and any alternative method of treatment. The physician also is under a duty to explain any significant foreseeable differences which might result from the alternatives which could be adopted.

The propriety of the trial court's refusal of the instruction must be tested on two separate bases. Initially, since informed consent was not

---

1. The "locality" rule (same locality) and the so called "modified locality rule" (same or similar locality) have come under severe attack in recent years. While it appears that much of the justification for these rules has disappeared, as an intermediary court, we are constrained to apply the law as it stands and are not free to change the law. See, 23 Vand. L.R. 729; *Brune v. Belinkoff* (1968), 354 Mass. 102, 235 N.E.2d 793; *Pederson v. Dumouchel* (1967), 72 Wash.2d 73, 431 P.2d 973. *Hirschberg v. New York*, 398 NYS2d 470 (N.Y. Ct. of Cl. 1977).

among the issues enumerated in the pretrial order, we must determine whether the issue of informed consent was tried and therefore impliedly consented to being an issue by the defendant. If that hurdle is crossed, we must then determine whether instruction number 9 was properly refused on any other basis.

The Joys admit that informed consent was not an issue in the pleadings nor the pretrial order. It is further conceded that the pleadings were not amended to conform to the issues tried. It is Joys' position that Ind. Rules of Procedure, Trial Rule 15(B) makes a formal motion to amend the pleadings unnecessary if the issues were actually tried by the parties. A fair reading of TR. 15(B) clearly supports their contention and we must agree. TR. 15(B) states:

"(B)   Amendments to conform to the evidence. When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment, but failure so to amend does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense upon the merits. The court may grant a continuance to enable the objecting party to meet such evidence."

This rule, as interpreted in the cases of *Ayr-Way Stores, Inc. v. Chitwood* (1973), 261 Ind. 86, 300 N.E.2d 335; *Physicians Emergency Service, Inc. v. McCarthy* (1975), 165 Ind.App. 21, 330 N.E.2d 380; and *Theye v. Bates* (1975), 166 Ind.App. 652, 337 N.E.2d 837, clearly indicates that the pleadings are deemed to conform to the issues as tried by the parties in the case. When and if evidence is presented that is not within the purview of the pleadings or the pretrial order, the party opposing such evidence must object to its admittance, or the issue supported by the evidence will impliedly be consented to be tried by that party. *Theye, supra.*

In the case at bar Joys questioned Dr. Chau in regard to the probable recovery from the various injuries to Joy. Dr. Chau was further questioned as to his informing Joy of the broken right patella. He was also asked if he discussed alternative methods of treatment which could be employed upon Joy. The Joys repeatedly asked questions concerning Dr. Chau's communication to Mr. Joy of information concerning his condition and further medical treatment. On redirect examination the Joys repeatedly questioned Dr. Chau in great detail about the exact issue of informed consent. For example Chau was asked:

"Q. That is really called the right of the patient to make an informed consent. You understand that term, don't you?

A. I do."

In addition, the Joys questioned Dr. Chau's expert witness in the same manner regarding communications with the patient receiving the treatment. All the above questioning was unobjected to by Dr. Chau. Evidence was therefore placed firmly in the record on the issue of informed consent. Dr. Chau did not object to that evidence being admitted nor did he move for continuance; he therefore impliedly consented to trying the issue of informed consent. *Ayr-Way, supra.*

We must next determine whether the refusal of the instruction was the proper course of action by the trial court.

The instruction must next be tested as to it being a correct statement of the law of informed consent in Indiana. Neither party has presented pertinent Indiana authority on this issue, and this court has been unable to find controlling precedent in this jurisdiction. We must therefore treat this matter as one of first impression in this state.

The doctrine of informed consent appears to have had its origins in the tort of battery, as the lack of sufficient information upon which to make an intelligent decision vitiates any consent given by the patient. See *Nishi v. Hartwell* (1970), 52 Haw. 188, 473 P.2d 116. However, since the leading case of *Natanson v. Kline* (1960), 186 Kan. 393, 350 P.2d 1093, as modified at 187 Kan. 186, 354 P.2d 670, the theory of informed consent has shifted to a breach of a duty owed by a physician to his patient, i.e., negligence. *Natanson, supra; Getchell v. Mansfield* (1971), 260 Or. 174, 489 P.2d 953. See also 79 A.L.R.2d 1028,

and the cases cited therein. It is clear that Indiana must recognize the duty of a physician to make a reasonable disclosure of material facts relevant to the decision which the patient is requested to make. *Natanson, supra; Bang v. Charles T. Miller Hospital* (1958), 251 Minn. 427, 88 N.W.2d 186; *Cobbs v. Grant* (1972), 104 Cal. Rptr. 505, 502 P.2d 1. The duty arises from the relationship between the doctor and patient and is imposed as a matter of law, as are most legal duties, *Miller v. Griesel et al.* (1974), 261 Ind. 604, 308 N.E.2d 701.

While it is clear that the duty to disclose must exist, the extent of the disclosure and the exceptions to such disclosure need not be discussed at this time due to our resolution of this matter. Some examples of the disclosure standards are discussed in the above cited cases and also in 64 Nw. U. L. Rev. 628.

The instruction given by the trial court informed the jury that Dr. Chau was negligent if he failed to advise Joy of his injuries, methods of treatment, expected results, or alternatives available. The instruction which the plaintiffs tendered contained essentially the same elements, with one exception. The requested instruction stated specifically that Dr. Chau was under a legal duty to so inform Joy. While the trial court's instruction did not explicitly mention the word "duty", the wording of the instruction is such that the duty is implied if the jury found Dr. Chau did not advise Joy as specified above. The instruction commanded a finding of negligence if Dr. Chau did not inform Joy and therefore the instruction given by the trial court sufficiently covered the elements of the refused instruction. It is not error to refuse a tendered instruction when the substance of that instruction is adequately covered by those given. *Frankfort v. Owens* (1976), 171 Ind.App. 566, 358 N.E.2d 184. We therefore find no reversible error as to the issue of informed consent.

### IV.

The final allegation of error charges that the trial court should have given the appellants' instruction 11 to the jury. This instruction, in essence, informed the jury that if Dr. Chau was aware of, and customarily employed, an accepted method of treatment, and did not use that method in treating Joy, absent a valid medical reason, then Dr. Chau was

negligent. More succinctly stated, the instruction attempted to judge Dr. Chau by the methods which he usually employed.

The instruction was properly refused because it is not a correct statement of the law. As we stated above, a physician is not limited to the most generally accepted method of treatment. When more than one method of treatment is approved and accepted by the profession, a physician may choose any of those methods. *Board of Medical Registration and Examination, supra; Brook, supra.* In the case at bar evidence was introduced on the accepted methods of treatment by experts for each side. While the evidence of Dr. Chau's usual method was clearly admissible, the law is just as clear that he may not be bound to employ that same method in every case.

The instruction tendered was not a correct statement of the law and therefore was properly refused. *Dahlberg v. Ogle* (1978), 268 Ind. 30, 373 N.E.2d 159.

Having found no reversible error, we affirm the judgment of the trial court.

Affirmed.

Lowdermilk and Robertson, JJ., concur.

NOTE—Reported at 377 N.E.2d 670.