**Harold W. GRIFFITH, M.D., Appellant–Defendant Below,**

**v.**

**Carol JONES, as Personal Representative of the Estate of Jon W. Jones, deceased, Appellee–Plaintiff Below.**

No. 57A03–9103–CV–90.

Court of Appeals of Indiana, Third District.

Aug. 29, 1991.

James P. Fenton, John M. Clifton, Jr., Fort Wayne, for appellant-defendant.

Daniel A. Roby, Kathryn J. Roudebush, Roby and Hood, Fort Wayne, for appellee-plaintiff.

STATON, Judge.

A Petition for Certification and Acceptance of Interlocutory Appeal Pursuant to Rule 4(B)(6), Indiana Rules of Appellate Procedure filed by Harold Griffith, M.D. was granted on June 19, 1991. He presents four restated issues:

I. Whether the trial court erred in finding that the prudent patient standard rather than the modified locality rule sets forth the applicable standard of care in an informed consent case?

II. Whether the trial court erred in precluding the Medical Review Panel's issuance of an expert opinion regarding compliance with the standard of care in an informed consent case by instructing the Panel to find, pursuant to IND.CODE 16–9.5–9–7(c), that there are material issues of fact, not requiring expert opinion, bearing on liability for consideration by the court or jury?

III. Whether the trial court erroneously instructed the Medical Review Panel concerning the definition and applica-

tion of the phrase "a factor" in IND. CODE 16–9.5–9–7(d)?

IV. Whether the trial court erroneously denied Dr. Griffith's motion to exclude from the Medical Review Panel a consent form and a copy of IND.CODE 16–9.5–1–4?

Jones alleges as cross-error the trial court's denial of her Motion for Partial Summary Judgment on the issue of informed consent. She also challenges the trial court's definition of "a factor" referenced in I.C. 16–9.5–9–7(d).

We affirm.

On June 27, 1985, Jon Jones was admitted to Parkview Memorial Hospital in Fort Wayne, Indiana to undergo a femoral angiography. The angiography was performed by Dr. Griffith, who did not advise Jones that there was a risk of death in undergoing the procedure. After the procedure was concluded, Jones experienced a severe anaphylactic reaction to the radiographic contrast material. The crash cart in the radiological area of the hospital was not equipped with diluted intravenous epinephrine; consequently, Dr. Griffith administered epinephrine via an intramuscular injection. Attempts to resuscitate Jones were unsuccessful.

Carol Jones, the wife of the decedent, filed a Motion for Preliminary Determination in the United States District Court for the Northern District of Indiana, seeking a preliminary determination in connection with the convening of a medical review panel under the Indiana Medical Malpractice Act. She alleged that Dr. Griffith failed to obtain informed consent and negligently administered epinephrine intramuscularly rather than intravenously.

The decision rendered in *Jones v. Griffith* (N.D.Ind.1988) 688 F.Supp. 446 was vacated by the United States Court of Appeals, Seventh Circuit because the district court lacked subject matter jurisdiction to make a preliminary determination in the nature of an advisory opinion. *Jones v. Griffith* (7th Cir.1989), 870 F.2d 1363. The federal appellate court concluded that Jones must first obtain instructions from an Indiana court to the Medical Review Panel ("panel") and obtain an opinion from the panel before filing a malpractice suit in federal court under diversity jurisdiction. *Id.* at 1367–68.

On June 21, 1989, Jones filed a Motion for Preliminary Determination in the Allen Superior Court. The matter was subsequently venued to the Noble Superior Court. Jones requested partial summary judgment that Dr. Griffith breached his duty to act within the appropriate standard of care for informed consent by failing to inform the decedent that death was a risk inherent in the arteriogram procedure. The published deposition of Dr. Griffith disclosed that he was aware of this risk prior to June 1985. Record, p. 98.

Alternatively, Jones requested a determination that there exists a material issue of fact, not requiring expert opinion, bearing on liability for consideration by the court, which precludes the rendering of expert opinion by the panel.

Dr. Griffith opposed partial summary judgment, and additionally filed a Motion to Exclude Evidence from Medical Review Panel. Dr. Griffith sought to exclude: (1) Plaintiff's Exhibit B, a consent form drafted after the decedent's death; (2) portions of his deposition which referred to Exhibit B; and (3) evidence relating to informed consent as delineated in I.C. 16–9.5–1–4.

On May 23, 1990, the trial court ordered published the depositions of Harold W. Griffith, M.D., Dennis Warner (a radiological technician), Bonnie Doerffler (a radiological technician) and Myra Chandler (a radiology nurse).

On June 14, 1990, the trial court issued its findings of fact, conclusions of law and judgment as follows:

## A. FINDINGS OF FACT

1. On June 27, 1985, Jon W. Jones underwent a radiographic procedure at Parkview Hospital, commonly referred to as femoral angiography, which procedure was performed by Defendant Harold Griffith, M.D.

2. Defendant, Harold Griffith, M.D., acknowledged that it was his responsibility to

inform patients undergoing femoral angiographic procedure of the risks of this procedure, but consciously elected not to advise patients of the risk of death or anaphylactic reaction to contrast dye.

3. Jon W. Jones was [sic?][1] advised as to the risk of death or anaphylactic reaction inherent in the procedure known as a femoral angiogram.

4. Jon W. Jones died at Parkview on June 27, 1985, at the conclusion of the femoral angiograpahic [sic] procedure performed by Defendant, Harold W. Griffith, M.D.

5. Defendant, Harold Griffith, M.D., testified that the cause of Jones' death was severe anaphylactic reaction to the radiographic contrast material. (Deposition of Dr. Harold Griffith, pp. 10, 14).

6. Death from anaphylactic reaction as a risk of this angiographic procedure was medically recognized and well known to Defendant, Harold Griffith, M.D., and had been recognized by him since 1946 when he was a medical school student. (Deposition of Dr. Harold Griffith, pp. 19–20).

7. When Jon W. Jones suffered apparant [sic] anaphylactic reaction to the radiographic contrast material, Defendant, Harold Griffith, M.D., administered epinepherine by was [sic] of intramuscular injection, even though Jones had an open intravenous line in his arm for administration of epinephrine in such an emergency. (Deposition of Dr. Harold Griffith, pp. 11, 63, 81).

8. Epinephrine was administered to Jon W. Jones intramuscularly rather than intravenoulsy [sic] because of the crash cart located in the radiological area was not properly equipped with diluted intravenous epinephrine. (Deposition of Dr. Harold Griffith, p. 90; Deposition of Myra Chandler, pp. 10–12).

9. It was the responsibility of Defendant, Harold Griffith, M.D., to have equipped the radiological crash cart with diluted intravenous epinephrine. (Deposition fo [sic] Dr. Harold Griffith, p. 88).

10. Cardiac resuscitation efforts performed on Jon W. Jones were unsuccessful.

11. This matter has not yet been submitted to a Medical Review Panel.

### B. CONCLUSIONS OF LAW

1. Indiana has adopted the prudent patient standard of care in informed consent cases, as articulated in *Joy v. Chau* (1978), 177 Ind.App. 29, 377 N.E.2d 670 and its reliance upon *Canterbury v. Spence* (C.A.D.C.1972), 464 F.2d 772, *cert. denied,* 409 U.S. 1064, 93 S.Ct. 560, 34 L.Ed.2d 518; *Revord v. Russell* (1980), Ind.App., 401 N.E.2d 763; footnote 7 of *Jones v. Griffith* (N.D.Ind.1988), 688 F.Supp. 446, *vacated on other grounds,* 870 F.2d 1363 (7th Cir., 1989); *Methodist Hospital v. Ray* (1990), Ind.App., 551 N.E.2d 463; and *Payne v. Marion General Hospital* (1990), Ind.App., 549 N.E.2d 1043.

2. The Medical Review panel cannot render an expert opinion regarding complaince [sic] with the standard of care in informed consent matters such as here involved, because the modified locality rule does not set the standard in Indiana informed consent cases. The appropriate standard requires the physician to disclose all risks which a reasonably prudent patient would consider material to the decision to undergo or forego a particular procedure.

3. Since there is no evidence in this record as to the frequency of anaphylactic reaction and death, resulting from femoral angiography, the Court is unable to find as a matter of law that disclosure of these risks would have been material to the decision of a reasonably prudent patient to undergo or forego this procedure.

Even though Defendant, Harold Griffith, M.D., admittedly made no disclosure whatsoever of the risks of anaphylactic reaction and death to decendent [sic], Jon W. Jones, the Court finds that there are still material

---

1. Dr. Griffith indicated that Bonnie Doerffler explained the risks from a femoral angiogram to Jon Jones. [Deposition of Dr. Griffith, pp. 25–27] Bonnie Doerffler indicated that she did not advise Jon Jones of a risk of death from a femoral angiogram. [Deposition of Bonnie Doerffler, p. 20]

issues of fact precluding partial summary judgment in favor of Plaintiff on the informed consent issue, in that these risks may have been so unlikely to occur that they would have been immaterial to a reasonably prudent patient, and therefore, need not have been disclosed to Jon W. Jones. The Court finds that the issue of the materiality of these risks to a reasonably prudent patient, and hence whether the standard of care regarding disclosure was or was not breached, remains a question for determination by the trier of fact after hearing lay as well as expert testimony. Accordingly, Plaintiff's Motion for Partial Summary Judgment on informed consent is denied. *See Johnson v. Padilla,* 433 N.E.2d 393 (Ind.App.1982) and I.C. 16–9.5–10–1. The Chairman of the Medical Review Panel is, therefore, directed to instruct the members of the Medical Review Panel as follows:

> Regarding informed consent issues, the Medical Review Panel is directed to find, pursuant to I.C. 16–9.5–9–7(c), that there are material issues of fact, not requiring expert opinion, bearing on liability for consideration by the court or jury.

4. The Indiana Legislature's use of the phrase "a factor" in I.C. 16–9.5–9–7(d), a statute which must be strictly construed as it is in derogation of common law, lowers the traditional threshold of causation in that it does not require that the conduct complained of be a *substantial* factor.

5. In the context of I.C. 16–9.5–9–7(d) "a factor" means any circumstance or influence which brings about or contributes to a result. See Black's Law Dictionary (5th Edition 1979).

6. As the meaning of "a factor" in I.C. 16–9.5–9–7(d) is a matter of law for appropriate preliminary determination pursuant to I.C. 16–9.5–10–1 the Panel Chairman is further directed to instruct the members of the Medical Review Panel with regard to the use of the phrase "a factor" in I.C. 16–9.5–9–7(d), as follows:

> The Panel shall find that Dr. Griffith's failure to administer intravenous epinephrine was "a factor" in the death of Jon W. Jones if it constituted a circum-

stance or condition which brought about or contributed to Jon Jones' death. The Panel is further instructed that it is not to determine whether Dr. Griffith's conduct was a "substantial factor" since that is a matter for jury determination.

7. Inasmuch as I.C. 16–9.5–9(a) places no limitation on what evidence may be submitted to the Medical Review Panel, Defendant's Motion to Exclude Griffith Deposition Exhibit "B" from consideration by the Medical Review Panel is hereby denied, and the Medical Review Panel is instructed to consider said Exhibit, along with other submitted materials, and to accord it such weight, if any, as the Panel deems appropriate. Objections to the admissibility of said Exhibit at trial are hereby preserved.

The Panel Chairman shall, however, instruct the Panel that under Indiana law evidence of remedial action taken by the defendant after the alleged act of negligence herein took place is irrelevant to the issue of the alleged negligence of the defendant on the date of the alleged act of negligence.

8. Defendant's Motion to Exclude from the Plaintiff's Panel submission evidence of I.C. 16–9.5–1–4 (statute dealing with consent) is denied for the reason outlined above. The Panel Chairman shall, however, instruct the medical Review Panel that I.C. 16–9.5–1–4 was not the law of the State of Indiana on the date of the alleged negligence of the defendant herein.

Record, pp. 112–116.

## I.

### *Standard of Care*

Dr. Griffith contends that the trial court erred in finding that the prudent patient standard rather than the modified (similar) locality rule sets the standard of care in an informed consent case.

■ The similar locality rule was first adopted in Indiana in the case of *Gramm v. Boener* (1877), 56 Ind. 497. The degree of care and skill required is that degree of care and skill commonly exercised by a like

practitioner in similar localities. *Burke v. Capello* (1988), Ind., 520 N.E.2d 439.

■ The trial court indicated that the appropriate standard in an informed consent case "requires the physician to disclose all risks which [a] reasonably prudent patient would consider material to the decision to undergo or forego a particular procedure." Record, p. 114. In support of its conclusion that Indiana has adopted the prudent patient standard of informed consent, the trial court relied upon *Joy v. Chau* (1978), 177 Ind.App. 29, 377 N.E.2d 670, *reh. denied; Revord v. Russell,* (1980), Ind.App., 401 N.E.2d 763; *Jones, supra; Methodist Hospital v. Ray* (1990), Ind. App., 551 N.E.2d 463; and *Payne v. Marion General Hospital* (1990), Ind.App., 549 N.E.2d 1043, *reh. denied.*

The *Joy* court recognized the duty of a physician to "make a reasonable disclosure of material facts relevant to the decision which the patient is requested to make" but found it unnecessary to discuss the extent of disclosure or exceptions to disclosure. *Joy, supra,* 377 N.E.2d at 676–7.

Jones contends that the modified locality rule was clearly rejected in *Revord, supra.* The *Revord* court discussed at length the standard of care applicable in informed consent cases:

"To fulfill his duties, Russell was obligated to make 'a reasonable disclosure of material facts relevant to the [Revords'] decision.' *Id.* at 676. As described in *Cobbs v. Grant, supra* [8 Cal.3d 229, 104 Cal.Rptr. 505] 502 P.2d [1] at 11 [1972]:

[T]he patient's right of self decision is the measure of the physician's duty to reveal. That right can be effectively exercised only if the patient possesses adequate information to enable an intelligent choice. The scope of the physician's communications to the patient, then, must be measured by the patient's need, and that need is whatever information is material to the decision. Thus the test for determining whether a potential peril must be divulged is its materiality to the patient's decision. *Canterbury v. Spence* (C.A.D.C.1972) 464 F.2d 772, 786.

.     .     .     .     .

The issue in informed consent is whether the patient was subjected to the inherent risks of the proposed treatment without being permitted to intelligently reject or accept treatment...."

*Revord, supra,* at 766–7.

*Methodist, supra,* does not address the applicable standard of care in an informed consent case.

In *Payne, supra,* an estate administrator claimed that a physician had failed to obtain the decedent's informed consent before issuing a "no code" order preventing resuscitation attempts. The court observed:

"The duty owed to Payne by Dr. Donaldson is well established as a matter of law. A physician has the duty to make reasonable disclosure of material facts relevant to the care of a patient. *Revord, supra; Joy v. Chau* (1978), 177 Ind.App. 29, 377 N.E.2d 670, *trans. denied.* The patient's right of self-determination is the *sine qua non* of the physician's duty to obtain informed consent. As Justice (then Judge) Cardozo said: 'Every human being of adult years and sound mind has a right to determine what shall be done with his own body....' *Schloendorff v. Society of New York Hospital* (1914), 211 N.Y. 125, 129, 105 N.E. 92, 93. *See Canterbury v. Spence* (C.A.D.C.1972), 464 F.2d 772."

*Payne, supra,* at 1046.

The *Canterbury* and *Cobbs* decisions relied upon in *Joy, supra, Revord, supra,* and *Payne, supra,* rejected a standard of care in informed consent cases based solely upon what a reasonable physician under similar circumstances would have disclosed. Rather, the scope of disclosure is measured by the patient's need for information material to the decision to be made. All risks potentially affecting the decision must be unmasked. *Canterbury, supra,* at 786–87.

Dr. Griffith has directed our attention to the decisions in *Searcy v. Manganhas* (1981), Ind.App., 415 N.E.2d 142 and *Ellis v. Smith* (1988), Ind.App., 528 N.E.2d 826. These decisions considering informed consent claims contemplate expert medical testimony by physicians familiar with the

standard of care in the same or a similar locality. However, we conclude that the weight of authority supports the trial court's determination that the prudent patient standard of care in informed consent cases, as articulated in *Canterbury, supra,* has been adopted in Indiana.

## II.

### *Instruction Pursuant to I.C. 16–9.5–9–7(c)*

Dr. Griffith also challenges the trial court's finding that the medical review panel can not render an expert opinion in the instant case. Finding that lay testimony as well as expert testimony is needed, the trial court directed the panel to find that, concerning the informed consent claim, there exist material issues of fact, not requiring expert opinion, pursuant to I.C. 16–9.5–9–7(c).

The trial court found authority for its order in *Johnson v. Padilla* (1982), Ind. App., 433 N.E.2d 393. Johnson alleged that the defendant physician had negligently performed a procedure; the defendant denied performing the procedure. The *Johnson* court held that the issue of whether Dr. Padilla performed a D & C procedure was an issue of fact not requiring expert opinion. The trial court was not precluded from preliminarily ruling upon matters covered by I.C. 16–9.5–9–7(c): "That there is a material issue of fact, not requiring expert opinion, bearing on liability for consideration by the court or jury." *Id.* at 395–96.

In the instant case, the trial court identified a material issue of fact as "whether the risk of death may have been so unlikely to occur that the risk would have been immaterial to a reasonably prudent patient, and therefore, need not have been disclosed to Jon W. Jones." Record, p. 114. The trial court stated that both expert and lay testimony was to be considered by the jury in resolving this issue. *Id.*

Dr. Griffith contends that the standard of care required of a physician is to be established solely by the expert testimony of physicians, except in a unique class of cases involving foreign objects left in a patient's body during surgery. He refers us to *Burke, supra,* in which our supreme court reviewed a grant of summary judgment in favor of a defendant physician, stating:

> "Ordinarily, because of the technical and complicated nature of medical treatment, the trier of fact is simply unable to rationally apply the standard of care to it without the benefit of informative expert opinion on the ultimate question of breach of duty. This was the situation in *Bassett v. Glock* (1977), 174 Ind.App. 439, 368 N.E.2d 18, where a doctor's decision to follow a conservative treatment rather than surgery for a disc disease was challenged. It was also the situation in *Marquis v. Battersby* (1982), Ind.App., 443 N.E.2d 1202, where the patient suffered from an inflammation of the edges of an incision following surgery. In these two cases the lack of an informative expert opinion of breach of duty by the defendant foreclosed a rational verdict for plaintiff. This case does not fail submissibility on the second element of the tort because of the absence of supporting expert opinion. It is unlike the *Bassett* and *Marquis* cases in that it involves the leaving of a foreign object in the body which should have been removed by an act understandable by the jury without extensive technical input."

*Id.* at 441.

Jones replies that the reasonably prudent patient standard requires presentation to the trier of fact both lay and expert testimony. While expert testimony is needed to elucidate the risks and establish the magnitude of a particular risk, lay testimony is required to ascertain the materiality of the risk to a reasonably prudent patient. She argues that the combination necessarily precludes the panel from rendering an expert opinion on whether a physician complied with the applicable standard of care.

In *Kranda v. Houser–Norborg Medical Corp.* (1981), Ind.App., 419 N.E.2d 1024, a patient contended that her physician failed to warn her of untoward consequences of a

medical procedure. The court discussed the role of expert medical opinion in an informed consent case:

"The general rule is that expert medical testimony is required to establish the content of such 'reasonable disclosure' unless the situation is clearly within the realm of laymen's comprehension as where the disclosure is so obvious that laymen could recognize the necessity of such disclosure. *Revord, supra* (citing Annot., 52 A.L.R.3rd 1084 (1973)). Experts are ordinarily indispensable to identify and elucidate for the fact finder the risks of therapy and the consequences of leaving existing maladies untreated. *Revord, supra* at 766 (quoting *Canterbury v. Spence*, (C.A.D.C.1972) 464 F.2d 772, 786). Because Bartholin cyst surgery is not a matter within the common knowledge or experience of laymen, medical testimony was required to establish a prima facie case under informed consent."

*Id.* at 1037–38.

In *Spencer v. Christiansen* (1990), Ind. App., 549 N.E.2d 1090, *reh. denied, trans. denied*, an administratrix challenged the medical review panel's opinion as improper in that it determined a disputed issue of fact not requiring medical expertise. The court stated: "if the opinion reached by the panel necessarily assumes or resolves a disputed fact not requiring medical expertise, the panel has exceeded its statutory authority." *Id.* at 1091.

The *Spencer* court noted that the parties agreed that Dr. Christiansen did not inform William Spencer of the risk of miscalculating the date of the onset of his ulcerative colitis. Had a factual dispute existed as to whether an adequate communication of risk was made, the jury would have resolved the issue of fact "unassisted by expert opinion." *Id.* On the other hand, whether there is a significant risk in misdetermining the date of the ulcerative colitis onset presented an issue requiring expert testimony. *Id.* The court held that, *in the absence of a factual dispute as to the event or adequacy of disclosure*, the panel could have concluded that Dr. Chris-

tiansen's failure to advise Spencer of the risk in miscalculating the date of the onset of his illness did not constitute a failure to meet the applicable standard of care. *Id.* at 1092 (emphasis added).

■ A medical review panel is impaneled for the sole purpose of rendering an expert medical opinion. I.C. 16–9.5–9–7; *Methodist, supra*, at 468.

■ In the instant case, the need for lay testimony as to what a reasonably prudent person would have deemed material in his decision making process precludes the panel from rendering an expert opinion. A reasonably prudent patient might consider *any* risk of death material, as Jones suggests. On the other hand, the risk of death from an angiography may be insignificant to a reasonably prudent patient because of statistical improbability. The issue is not one appropriately resolved by a medical expert. The function of the jury would be supplanted if the panel were permitted to opine as to the materiality of the lack of disclosure here at issue.

### III.

### *Definition of "a factor"*

Dr. Griffith next challenges the trial court's instruction to the panel as follows:

"The panel is further instructed that it is not to determine whether Dr. Griffith's conduct was a 'substantial factor' since that is a matter for jury determination."

Record, p. 115.

The trial court defined 'a factor' as:

"any circumstance or influence which brings about or contributes to a result. *See* Black's Law Dictionary (5th Edition 1979)."

Record, p. 115.

Dr. Griffith contends that the panel should have been instructed:

"The phrase 'a factor' means a factor which is 'substantial.' The word 'substantial' is used to denote the fact that the defendant's conduct must have such an effect in producing the harm as to lead reasonable men to regard it as a cause, using that word in the popular

sense in which there always lurks the idea of responsibility, rather than in the so-called 'philosophic sense', which includes every one of the great number of events without which any happening would not have occurred."

[Brief of Appellant, pp. 27–28]. Dr. Griffith claims that the panel is to render an opinion on proximate causation. He argues that conduct which is less than a "substantial" factor in causing harm will not support a finding of proximate cause.

Jones contends that "a factor" should be defined as any enhancement of risk of harm or decrease (loss) of chance of survival, regardless of magnitude. [Brief of Appellee, p. 36]. She contends that I.C. 16–9.5–9–7(d) lowered the traditional threshold of causation.

I.C. 16–9.5–9–7(d) provides that a medical review panel may express an expert opinion that "the conduct complained of was or was not *a factor* of the resultant damages." (Emphasis added.)

■ When a court is called upon to construe words in a single section of a statute, it must construe them with due regard for all other sections of the act and with regard for the legislative intent to carry out the purposes of the act. We presume that the legislature intended its language to be applied in a logical manner consistent with the statute's underlying policy and goals. *Detterline v. Bonaventura* (1984), Ind.App., 465 N.E.2d 215.

■ The dominant purpose of the Medical Malpractice Act is to preserve health care services for the community. A delay in instituting suit accommodates the discernment of facts by the medical review panel and the forming of its expert opinion. Mediation and settlement of claims will be encouraged while the filing of unreasonably speculative lawsuits will be discouraged. *Id.* at 218.

The panel usurps no function of the jury, but is to render an expert opinion to facilitate expedited settlement of claims. The panel is not charged with the ultimate determination of whether the conduct complained of was a proximate cause of injury to a plaintiff.

■ The trial court correctly found that the determination of proximate cause is left to the jury and instructed the panel accordingly. The phrase "a factor" should be given its plain meaning: any circumstance or influence which brings about or contributes to a result. In considering Jones' claim that Dr. Griffith negligently failed to administer epinephrine intravenously, the panel is to render an expert opinion on whether the conduct was "a factor" rather than a "substantial factor" in causing the plaintiff damage.

## IV.

### *Denial of Motion to Exclude Evidence*

■ Dr. Griffith alleges that the trial court's denial of his motion to exclude certain items from the panel permits the panel members to consider irrelevant and prejudicial information. He cites no authority in support of his allegation of error.

Notwithstanding waiver, the trial court did not err in denying the motion to exclude evidence. The trial court did not issue a preliminary ruling upon the admissibility of the challenged evidence at trial. The trial court specified that Dr. Griffith's objection to admissibility at trial was preserved. The trial court's ruling merely concerned submission to the panel. The Medical Malpractice Act does not limit a panel's consideration of information to that which constitutes competent admissible evidence at trial.

## V.

### *Denial of Jones' Motion for Partial Summary Judgment*

Jones argues that the trial court erred in failing to grant her Motion for Partial Summary Judgment on the issue of informed consent. The trial court found partial summary judgment to be inappropriate, inasmuch as there remained an issue of material fact as to whether a risk of death was so unlikely to occur as to be immaterial to a reasonably prudent patient. The trial

court found that the record disclosed no evidence as to the frequency of anaphylactic reaction and death resulting from femoral angiography.

Summary judgment is appropriate only where there exists no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Any doubt as to a fact, or an inference to be drawn, is resolved in favor of the nonmoving party. *Schrader v. Mississinewa Community School Corp.* (1988), Ind.App., 521 N.E.2d 949, 952.

Jones contends that no issue of material fact remains. She claims that Dr. Griffith's deposition established that the risk of death from a femoral angiogram is medically significant.

Jones' contention is unsupported by the record. No evidence was presented as to the incidence of death from anaphylactic reaction to a femoral angiography. As an issue of material fact as to the significance of this risk remains, the trial court properly denied Jones' motion for partial summary judgment.

Affirmed.

GARRARD and BAKER, JJ., concur.