**Patty Jo CULBERTSON and Jack Culbertson, Appellants– Plaintiffs Below,**

v.

**Dr. Roland B. MERNITZ, Appellee– Defendant Below.**

No. 25A03–9111–CV–344.

Court of Appeals of Indiana, Third District.

May 18, 1992.

Patrick M. O'Brien and Alastair J. Warr, Steers Sullivan McNamar & Rogers, Indianapolis, for appellants.

Mark W. Baeverstad, Hunt Suedhoff, Borror & Eilbacher, Fort Wayne, for appellee.

STATON, Judge.

Patty Jo and Jack Culbertson appeal the entry of a summary judgment in favor of Dr. Roland B. Mernitz in their medical malpractice action, raising the following three issues for our review:

    I.  Whether the trial court properly granted summary judgment dismissing Count II of the Culbertsons' complaint which alleged medical malpractice due to failure to inform of risks, alternatives, and after-effects of surgery.

    II.  Whether the trial court properly granted summary judgment dismissing Count IV of the Culbertsons' complaint which alleged loss of consortium.

    III.  Whether the trial court erred in denying the Culbertsons' Motion to Strike and/or remand the decisions of the Medical Review Panel.

We reverse on Issues I and II and affirm on Issue III.

Patty Jo Culbertson went to see Dr. Roland B. Mernitz in March of 1988 complaining of uncontrollable urine leakage and discharge from the vagina. After examining Mrs. Culbertson, Mernitz determined that her condition was due to a mild cystocele (bulging of the bladder into the vagina) and cervicitis. He also discovered that she had multiple fibroid tumors of the uterus. Mernitz recommended that he perform a Marshall Marchetti Krantz procedure (MMK) and cryosurgery on the infected tip of the cervix. "Cryosurgery is freezing, in this case, it would be freezing the end of the cervix." Record, p. 61. An MMK involves a bladder suspension to pull the bladder back into its proper position.

Mrs. Culbertson elected the MMK and cryosurgery, and both were performed by Dr. Mernitz. After the surgery, Mrs. Culbertson's cervix adhered to her vaginal wall. She saw another surgeon, who performed a total abdominal hysterectomy, bilateral salpingo oophorectomy and another MMK to correct this condition. Subsequently, she and her husband brought this medical malpractice action against Dr. Mernitz. The trial court disposed of the action by granting summary judgment in Dr. Mernitz's favor and the Culbertsons appeal.

I.

*Failure to Inform*

The Culbertsons argue that the trial court erroneously dismissed Count II of their complaint. Count II provides in relevant part:

    2.  That Defendant failed to make reasonable disclosure of material facts relevant to the decision which Plaintiff was required to make concerning the surgery.

    3.  That Defendant failed to inform Plaintiff as to the alternatives to surgery, inherent risks of surgery, and the possible after-effects of surgery.

Record, p. 8. As to Count II, the Medical Review Panel concluded:

The Panel determines that the Defendant did not advise Plaintiff, Patty Culbertson, of the complication of cervical adhesion to the vagina; the Panel further determines that such non-disclosure does *not* constitute a failure to comply with the appropriate standard of care, as such complication is not considered a risk of

such surgery requiring disclosure to the patient.

Record, p. 13.

■ A physician has a duty to make a reasonable disclosure of material facts relevant to the decision to consent to medical treatment. *Spencer v. Christiansen* (1990), Ind.App., 549 N.E.2d 1090, 1091, *transfer denied.* Indiana has adopted the "prudent patient" standard of care in informed consent cases; i.e. the physician must disclose those risks which a reasonably prudent patient would consider material in a decision whether to undergo or forego a particular medical procedure. *Griffith v. Jones* (1991), Ind.App., 577 N.E.2d 258, 264, *transfer pending.* The Culbertsons argue that the court erred in accepting the Panel's conclusion that the risk of cervical adhesion to the vagina did not need to be disclosed, as the determination of the materiality of the risk is a question which is not resolved through expert testimony but is a jury question resolved through application of the prudent patient standard. Dr. Mernitz argues that our opinion in *Griffith* was wrongly decided and Indiana has not adopted the prudent patient standard. Therefore, Dr. Mernitz argues that summary judgment was properly entered.

■ We decline Dr. Mernitz's invitation to reconsider our opinion in *Griffith.* Thus, we conclude that an issue of fact remained as to whether the risk of cervical adhesion to the vagina was material. This is a question for the jury which does not require expert testimony as to materiality, although expert testimony might be required to establish the existence and extent of the risk.[1]

■ However, the question does not end there. The Culbertsons argue that questions of fact also remain as to whether Dr. Mernitz was negligent in failing to inform her of the risks of bleeding, infection, death from anesthesia, and bladder perforation. In an affidavit, she states that she would not have undergone the MMK and

---

1. A determination of which issues require expert testimony in an informed consent case can be aided by analogy to the physician-patient relationship itself. The patient relies upon the physician to describe the possible complications of a contemplated medical procedure, the relative merits of alternative procedures and the potential harm from foregoing treatment. Similarly, expert testimony is necessary at trial as the jury, like the patient, will not be aware of potential risks and feasible alternatives to a medical procedure. Too, the likelihood of a particular complication arising is a fact of which the patient would be unaware. He relies upon the physician to provide him with this information, perhaps with a percentage figure ("one in a hundred patients develop X complication") or with a descriptive characterization ("there is an extremely remote possibility that you may develop paralysis in your lower extremities as a result of this procedure"). Such information should likewise be supplied to the jury in the form of expert testimony.

On the other hand, the physician is unaware of the relative importance which a patient might place upon a particular risk. He merely provides the information to the patient and allows the patient to make the decision whether to undergo surgery or treatment. Similarly, it is the jury's task to determine whether a risk is material and therefore should have been disclosed. The "materiality" determination, given a background understanding of the nature and likelihood of a particular complication, is not aided by expert testimony any more than the adequacy of warnings in a product liability case can be resolved through expert testimony. *See Jarrell v. Monsanto Co.* (1988), Ind.App., 528 N.E.2d 1158, 1162, *transfer denied* (1990), Ind., 555 N.E.2d 453. It is reached through the jury's application of an objective standard to the information received from the expert witnesses to determine whether a prudent patient would consider a particular risk material. The aim is an approximation of the individual patient's application of his subjective judgment to the information which he receives from his physician. *Accord Canterbury v. Spence* (D.C.Cir.1972), 464 F.2d 772, 784–787.

Dr. Mernitz argues that the "prudent patient" standard would require the physician to "list every possible known and unknown potential risk so that the patient can' decide if one of those risks is material to him or her." Appellee's brief, p. 13. This argument misapprehends the standard. The question is not whether a particular patient would find a risk material. The question is whether the hypothetical *prudent patient* would find a risk material. A particular patient may want to know even the remotest risk, but if the prudent patient would not have found the risk material, the physician will not be held liable for failing to disclose it. While the standard may require the physician to exercise some judgment, any other objective standard requires the exercise of judgment when it is applied to a particular situation. *See Canterbury, supra,* at 787.

cryocauterization procedures had she been advised of those risks. Dr. Mernitz acknowledged that those risks were present in his deposition, although he did not consider them material. Dr. Mernitz argues that his failure to inform Mrs. Culbertson of risks which never materialized did not constitute negligence because these risks were not the cause of her injury.

We believe that the better view is that espoused by Dr. Mernitz. An action prefaced on the doctrine of informed consent is based on the tort of negligence. *Ellis v. Smith* (1988), Ind.App., 528 N.E.2d 826, 827, *reh'g denied.* To recover in an action for negligence, the plaintiff must prove that the negligence of the defendant caused the injury which resulted. *Northern Indiana Public Service Co. v. Stokes* (1986), Ind.App., 493 N.E.2d 175, 179, *reh'g* denied. Certainly, that concept presents some special problems in the context of informed consent, where the negligent act does not physically set in motion a chain of events which ends in the injury, but rather allows the unknowing plaintiff to acquiesce to an inherently risky procedure. However, the end to which the tort of negligence aspires is best served when the element of causation is defined within the following limits:

> If adequate disclosure could reasonably be expected to have caused that person to decline the treatment because of the revelation of the kind of risk or danger that resulted in harm, causation is shown, but otherwise not.

*Canterbury, supra* n. 1, at 791. Were we to adopt the Culbertsons' view, plaintiffs could recover for an unforeseeable or unknowable injury where the doctor had failed to inform the patient of the risk of a material injury which was foreseeable but never occurred; where the injury is one unforeseen by medical science, no duty to inform of the unknown risk exists. If it were otherwise, a physician would be held to strict liability—he is not.

We hold that the trial court erroneously granted summary judgment in favor of Dr. Mernitz on Count II of the Culbertsons' complaint. We remand for trial on the issue of whether the risk of cervical adhesion to the vagina was material.

## II.

### Loss of Consortium

The Culbertsons argue that the trial court erroneously dismissed Count IV of their complaint, which alleges that as a result of Dr. Mernitz's negligence, Mr. Culbertson suffered a loss of spousal consortium. Dr. Mernitz argues that because loss of consortium is derived from the spouse's claim and all other claims had been dismissed, the trial court properly dismissed Count IV. While we do not quarrel with Dr. Mernitz's characterization of the loss of consortium claim, *see Kolkman v. Falstaff Brewing Corp.* (1987), Ind.App., 511 N.E.2d 478, 480, *transfer denied,* we concluded above that summary judgment was improvidently granted on Count II of the complaint. Therefore, the loss of consortium claim also survives summary judgment.

## III.

### Motion to Strike

The Culbertsons finally argue that the trial court erred in denying their Motion to Strike Opinion of the Medical Review Panel. Their argument has no merit. Dr. Mernitz correctly points out that "[a]ny report of the expert opinion reached by the medical review panel shall be admissible as evidence in any action subsequently brought by the claimant in a court of law." Ind.Code 16–9.5–9–9; *Dickey v. Long* (1991), Ind.App., 575 N.E.2d 339, 340. Therefore, we affirm the trial court's denial of the Culbertsons' Motion to Strike.

Affirmed in part, reversed in part, and remanded.

GARRARD, J., concurs.

HOFFMAN, J., concurs in part, and dissents in part and files separate opinion.

HOFFMAN, Judge, concurring and dissenting.

I concur with the majority's decision to affirm the trial court's denial of the Cul-

bertsons' motion to strike, but I respectfully dissent from the majority's decision to reverse the trial court's entry of summary judgment in favor of Dr. Mernitz.

The majority cites *Griffith v. Jones* (1991), Ind.App., 577 N.E.2d 258, *trans. pending*, in support of its position that Indiana has adopted the "prudent patient" standard of care in informed consent cases. However, the cases the *Griffith* court relied upon do not support such a standard. Rather, the cases simply set out the well-established duty of a physician to make a reasonable disclosure of material facts relevant to the patient's decision. *Payne v. Marion General Hosp.* (1990), Ind.App., 549 N.E.2d 1043, 1046; *Revord v. Russell* (1980), Ind.App., 401 N.E.2d 763, 766; *Joy et al. v. Chau* (1978), 177 Ind.App. 29, 39, 377 N.E.2d 670, 676–677. Moreover, although the *Griffith* court found otherwise, both *Payne* and *Revord* relied on the general rule that expert medical testimony is required to establish the content of reasonable disclosure unless the situation is clearly within the realm of laypersons' comprehension.[1] *Payne* at 1050; *Revord* at 766. Furthermore, as the *Griffith* court noted, this Court has applied the "same or similar locality" standard of care in informed consent cases (*see, e.g., Ellis v. Smith* (1988), Ind.App., 528 N.E.2d 826, 828); therefore, the *Griffith* court erred in adopting the prudent patient standard of care.

Under the same or similar locality standard of care, a physician must disclose those risks a reasonable physician under similar circumstances would have disclosed. *Ellis* at 828. As the situation in the instant case was clearly outside the realm of laypersons' comprehension, expert testimony was required to establish whether the disclosure was reasonable. The medical review panel found that the risk of cervical adhesion to the vagina was not a material risk of the MMK procedure and that Dr. Mernitz's failure to disclose the risk was not a breach of the applicable standard of care. The Culbertsons failed to present any expert testimony contrary to the panel's findings; therefore, the trial court's entry of summary judgment in favor of Dr. Mernitz was proper. *See Ellis* at 829.

Moreover, even assuming the majority was correct in applying the prudent patient standard of care, the trial court's entry of summary judgment was still proper. As the majority notes, Mrs. Culbertson stated in an affidavit that she would not have undergone the MMK procedure had she been advised of the risks of bleeding, infection, death from anesthesia, bladder perforation, and failure of the procedure.[2] However, none of these risks materialized. Whether or not the risk materialized is irrelevant since the patient would not have undergone the treatment and been injured had she been informed of all material risks; however, if the unrevealed risk that should have been made known did not materialize, the omission is without legal consequence. *Canterbury v. Spence* (D.C.Cir.1972), 464 F.2d 772, 790. I would affirm the trial court's entry of summary judgment in favor of Dr. Mernitz.

---

1. As the *Griffith* court noted, the *Joy* court found it unnecessary to discuss the extent of disclosure or exceptions to disclosure. *Id.* 177 Ind.App. at 39, 377 N.E.2d at 677.

2. Dr. Mernitz stated in a deposition that he did advise Mrs. Culbertson of these risks.